054·15    055·15    056·15

CAUSE NOS. PD-0054-15, PD-0055-15,
& PD-0056-15

IN THE COURT OF CRIMINAL APPEALS

FOR THE STATE OF TEXAS

ORIGINAL

---

JAVIER NOEL CAMPOS

Appellant

V.

THE STATE OF TEXAS

Appellee

RECEIVED IN
COURT OF CRIMINAL APPEALS

APR 22 2015

Abel Acosta, Clerk

---

On Petition for Discretionary Review from the First Court of Appeals
In Nos. 01-13-00415-CR, 01-13-00416-CR, & 01-13-00417-CR
Affirming the Convictions
In Cause Nos. 1328806, 1328807, & 1308988
From the 184th District Court of Harris County, Texas
Honorable Jan Krocker, Presiding

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

APR 22 2015

Abel Acosta, Clerk

Javier N. Campos
Pro Se Representation
TDCJ No. 1854678
Stiles Unit
3060 FM 3514
Beaumont, Texas 77705

CAUSE NOS. PD-0054-15, PD-0055-15,
& PD-0056-15


IN THE COURT OF CRIMINAL APPEALS

FOR THE STATE OF TEXAS

---

JAVIER NOEL CAMPOS

Appellant

V.

THE STATE OF TEXAS

Appellee

---

On Petition for Discretionary Review from the First Court of Appeals
In Nos. 01-13-00415-CR, 01-13-00416-CR, & 01-13-00417-CR
Affirming the Convictions
In Cause Nos. 1328806, 1328807, & 1308988
From the 184th District Court of Harris County, Texas
Honorable Jan Krocker, Presiding

---

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

---

Javier N. Campos
Pro Se Representation
TDCJ No. 1854678
Stiles Unit
3060 FM 3514
Beaumont, Texas 77705

i

# IDENTITY OF JUDGE, PARTIES, AND COUNSEL

Javier Noel Campos
Appellant

## Trial Counsel

Defense Counsel:
Diana Olvera
SBOT: 15278650
Daniel Lacayo, Jr.
SBOT: 24041284
Harris County Public Defender's Office
1201 Franklin, 13th Floor
Houston, Texas 77002

State Counsel:
Greg Houlton
SBOT: 24062182
Tiffany Johnson
Harris County Dist. Attorney's Office
1201 Franklin, Ste. 600
Houston, Texas 77002

## Appellate Counsel

Appellant Counsel:
Wayne T. Hill
SBOT: 09656300
4615 Southwest Freeway, Ste. 600
Houston, Texas 77027

Appellee Counsel:
Devon Anderson
Dist. Attorney
Clinton A. Morgan
Assist. Dist. Attorney
SBOT: 24071454
Harris County Dist. Attorney's Office
Appellate Division
1201 Franklin, Ste. 600
Houston, Texas 77002

## Trial Judge

Honorable Jan Krocker
184th District Court
Harris County Crim. Justice Center
1201 Franklin Street, 17th Floor
Houston, Texas 77002

TABLE OF CONTENTS

|  | PAGES |
|---|---|
| IDENTITY OF JUDGE, PARTIES, AND COUNSEL | ii |
| TABLE OF CONTENTS | iii, iv |
| INDEX OF AUTHORITIES | v, vii |
| STATEMENT REGARDING ORAL ARGUMENT | viii |
| STATEMENT OF THE CASE | viii |
| STATEMENT OF PROCEDURAL HISTORY | viii |
| STATEMENT REGARDING CONSOLIDATION OF PETITION FOR DISCRETIONARY REVIEWS | viii |
| GROUND FOR REVIEW | 1 |
| REASON FOR REVIEW | 1 |
| ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND ONE | 1 |
| GROUND FOR REVIEW | 2 |
| REASON FOR REVIEW | 2 |
| ARGUMENT AND AUTHORITES FOR REVIEW OF GROUND TWO | 3 |
| GROUND FOR REVIEW | 4 |
| REASON FOR REVIEW | 5 |
| ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND THREE | 5 |
| GROUND FOR REVIEW | 6 |
| REASON FOR REVIEW | 6 |
| ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND FOUR | 6 |
| GROUND FOR REVIEW | 8 |
| REASON FOR REVIEW | 8 |
| ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND FIVE | 8 |
| GROUND FOR REVIEW | 9 |
| REASON FOR REVIEW | 9 |
| ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND SIX | 10 |

TABLE OF CONTENTS, CON'T

PAGES

GROUND FOR REVIEW . . . . . . . . . . . 10

REASON FOR REVIEW . . . . . . . . . . . 11

ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND SEVEN . . . . 11

GROUNDS FOR REVIEW . . . . . . . . . . . 11

REASON FOR REVIEW . . . . . . . . . . . 11

ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUNDS
EIGHT, NINE, TEN, & ELEVEN . . . . . . . . . 12

GROUND FOR REVIEW . . . . . . . . . . . 14

REASON FOR REVIEW . . . . . . . . . . . 14

ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND TWELVE . . . . 14

GROUND FOR REVIEW . . . . . . . . . . . 15

REASON FOR REVIEW . . . . . . . . . . . 15

ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND THIRTEEN . . . . 15

PRAYER FOR RELIEF . . . . . . . . . . . 15

CERTIFICATE OF SERVICE . . . . . . . . . . 16

CERTIFICATE OF FILING . . . . . . . . . . 16

APPENDIX: MEMORANDUM OPINION FROM THE FIRST COURT OF
APPEALS, FILED JANUARY 13, 2015

CASES                                                                    PAGES

Black v. State, 358 S.W. 3d 823(Tex.App.-Fort Worth 2012)    .    .    .    10

Christopherson v. Allied-Signal Corperation, 939 F. 2d
1106(5th Cir.), cert denied, 503 U.S. 912(1992)    .    .    .    .    .    . 7

Estelle v. Williams, 425 U.S. 501(1976)    .    .    .    .    .    .    . 15

Fisher v. State, 851 S.W. 2d 298(Tex.Crim.App. 1993)    .    .    .    .    2

Garcia v. State, 792 S.W. 2d 88(Tex.Crim.App. 1990)    .    .    .    .    5

Gigliobianco v. State, 210 S.W. 3d 637(Tex.Crim.App. 2006)    .    .    .    4

Hankins v. State, 180 S.W. 3d 177(Tex.App.-Austin 2005)    .    .    . 13, 14

Hernandez v. State, 176 S.W. 3d 821(Tex.Crim.App. 2005)    .    .    .    . 3

Hightower v. State, 389 S.W. 2d 674(Tex.Crim.App. 1965)    .    .    .. . 14

Huddleston v. U.S., 485 U.S. 681(1988)    .    .    .    .    .    .    .    3

In re Winship, 397 U.S. 358(1970)    .    .    .    .    .    .    .    . 2

Jackson v. Virgina, 443 U.S. 307(1970)    .    .    .    .    .    .    . 1

Johnson v. State, 23 S.W. 3d 1(Tex.Crim.App. 2000)    .    .    .    .    . 1

King v. State, 953 S.W. 2d 266(Tex.Crim.App. 1997)    .    .    .    .    . 5

Kotteakos v. U.S., 328 U.S. 750(1946)    .    .    .    .    .    .    . 5, 10

Madrid v. State, 595 S.W. 2d 106(Tex.Crim.App. 1979)    .    .    .    . 15

McClendon v. State, 509 S.W. 2d 851(Tex.Crim.App. 1974)    .    .    . 12

McCullen v. State, 371 S.W. 2d 693(Tex.Crim.App. 1964)    .    .    .    . 14

Motilla v. State, 78 S.W. 3d 352(Tex.Crim.App. 1964)    .    .    .    . 14

Neal v. State, 256 S.W. 3d 264(Tex.Crim.App. 2008)    .    .    .    .    . 5

Old Chief v. U.S., 519 U.S. 172(1997)    .    .    .    .    .    .    . 4

Schutz v. State, 957 S.W. 2d 51(Tex.Crim.App. 1997)    .    .    .    .    6

Theus v. State, 845 S.W. 2d 847(Tex.Crim.App. 1992)    .    .    .    . 12

Tibbs v. Florida, 457 U.S. 31(1982)    .    .    .    .    .    .    .    . 1

CASES                                                                    PAGES

U.S v. Parker, 133 F. 3d 322(5th Cir. 1998)     .     .     .     .     .     .     13

U.S. v. Williams, 358 F. 2d 956(D.C. 2004)     .     .     .     .     .     .     8

Vela v. State, 209 S.W. 3d 128(Tex.Crim.App. 2006)     .     .     .     .     .     7

Williams v. U.S., 512 U.S. 594(1994)     .     .     .     .     .     .     .     8

Yont v. State, 872 S.W. 2d 706(Tex.Crim.App. 1993)     .     .     .     .     .     6

STATUTES

CCP Art. 36.01     .     .     .     .     .     .     .     .     .     .     .     .     3

CCP Art. 38.072     .     .     .     .     .     .     .     .     .     .     .     5

PEN §22.021     .     .     .     .     .     .     .     .     .     .     .     1

TRE 103     .     .     .     .     .     .     .     .     .     .     .     .     5

TRE 104     .     .     .     .     .     .     .     .     .     .     .     .     3

TRE 401     .     .     .     .     .     .     .     .     .     .     .     .     3

TRE 402     .     .     .     .     .     .     .     .     .     .     .     .     3

TRE 403     .     .     .     .     .     .     .     .     .     .     .     4

TRE 404     .     .     .     .     .     .     .     .     .     .     .     .     3

TRE 609     .     .     .     .     .     .     .     .     .     .     .     12

TRE 701     .     .     .     .     .     .     .     .     .     .     .     6

TRE 702     .     .     .     .     .     .     .     .     .     .     .     6

TRE 801     .     .     .     .     .     .     .     .     .     .     8, 10

TRE 802     .     .     .     .     .     .     .     .     .     .     8, 10

TRE 803     .     .     .     .     .     .     .     .     .     .     .     10

TRE 804     .     .     .     .     .     .     .     .     .     .     .     10

TRE 901     .     .     .     .     .     .     .     .     .     .     .     10

TRE 1001     .     .     .     .     .     .     .     .     .     .     .     10

TRE 1002     .     .     .     .     .     .     .     .     .     .     .     10

## STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument. Oral argument will benefit this Court during its decisional process.

## STATEMENT OF THE CASES

Appelant was tried and convicted in one trial on three separate accounts of aggravated sexual assaults of the same complainant. Cause Nos. 1308988(CR-V.1 p.26); 1328806(CR-V.1 p.10); & 1328807(CR-V.10). Appellant was found guilty and sentenced to sixty-eight(68) years in the Texas Department of Criminal Justice Institutional Division. The Court granted State's Motion to Cumulate Appellant's Sentences.(RR. V.11 p.10). Appellant gave timely notice of Appeal. Appellant filed his direct appeal to the First Court of Appeals. The Court affirmed all three Causes and issued its opinion on January 13, 2015. Appellant filed a Motion for Rehearing and Motion for En Banc Reconsideration and both were denied on February 19, 2015. Appellant now brings this Petition for Discretionary Review beofre the Court of Criminal Appeals to review the Court of Appeals decisions.

## STATEMENT OF PROCEDURAL HISTORY

The First Court of Appeals affirmed Appellant's appeals and issued its memorandum opinion on January 13, 2015. Appellant filed a Motion for Rehearing and a Motion for En Banc Reconsideration on February 2, 2015. Both Motions were denied on February 19, 2015.

## STATEMENT REGARDING CONSOLIDATION OF PETITION FOR DISCRETIONARY REVIEWS

Appellant's appeal attorney consolidated his three cases in one brief in accordance with TRAP 38.1(f). Appellant is doing the same in his Petition for Discretionary Reviews.

GROUND FOR REVIEW

THE EVIDENCE IS INSUFFICIENT AS A MATTER OF LAW
TO SUSTAIN APPELLANT'S CONVICTIONS FOR THE
OFFENSES OF AGGRAVATED SEXUAL ASSAULT OF A CHILD

REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly established applicable decisions of the Court of Criminal Appeals or the Supreme Court TRAP 66.3(c). Campos' convictions are based on an unreasonable determination of the facts of the case in light of the evidence presented in his trial. The evidence is Legally and Factually insufficient to support Campos' conviction by a rational trier of fact or a fair minded jurist. The State failed to prove all of the essential elements of the offenses charged beyond a reasonable doubt.

ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND ONE

The testimony given provides no legal or factual evidence that Campos sexually assaulted C.G. The State did not produce any physical evidence, an eyewitness, or prove any elements of the charge. PEN §22.021(a)(1)(B). Campos denied all allegations.(RR. V.4 p.56).

The task of this court is to consider all of the evidence in light most favorable to the verdict and determine if any rational trier of fact could have found beyond a reasoanble doubt all the essential elements of the offense. Jackson v. Virgina, 443 U.S. 307, 318-19(1970).

Evidence is legally insufficient when the only proper verdict is acquittal. Tibbs v. Florida, 457 U.S. 31, 41-42(1982). In conducting a factual sufficiency review, we are to neutrally analyze all of the evidence without the prism of in light most favorable to the prosecution. Johnson v. State, 23 S.W. 3d 1, 11 (Tex.Crim.App. 2000).

When asked by his mother, C.G. denied anything happened and that Campos is

1.

only a father figure.(RR. V.5 p.48). Although later at trial C.G. said abuse happened, it is conflicting with earlier denials of abuse.

C.G.'s exam came back normal(RR. V.5 pp.89, 93), and Dr. Isaac said there is other explanations to weight lose besides abuse(RR. V.5 p.113). He said someone can be acting out with respect to sexual behavior and not been sexually abused.(RR. V.5 p.116).

The Due Process Clause of the 14th Amend. to the U.S. Const. requires every state criminal conviction is to be supported by evidence that a rational trier of fact could accept as sufficient to prove all the elements of the offense charged beyond a reasonable doubt. In re Winship, 397 U.S. 358, 364(1970); Fisher v. State, 851 S.W. 2d 298, 302(Tex.Crim.App. 1993).

Given all of the evidence, the verdict is unsupported by proof of all the essential elements of the offense charged. Relief to this claim is therefore warranted.

GROUND FOR REVIEW

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTIONS FOR MISTRIALS WHEN THE PROSECUTOR'S OPENING STATEMENT COMMENTED ABOUT AN EXTRANEOUS OFFENSE NOT ALLEGED IN THE INDICTMENTS IN THESE TRIALS

REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly established applicable decisions of the Court of Criminal Appeals or the Supreme Court. TRAP 66.3(c). The State's opening argument on an unadjudicated extraneous offense not alleged in the indictment prejudiced Campos affecting the fairness and integrity of the trial process.(RR. V.4 p.14). A fair minded jurist would have granted Campos' motions for mistrial in response to the State's actions.

## ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND TWO

Before testimony or evidence is introduced, the State destroys Campos' character and presumption of innocence by introducing the unajudicated offense of stalking during opening statement. This goes beyond the scope of opening statement. CCP Art. 36.01(a)(3). The introdution of the inadmissible unajudicated extraneous offense of stalking is not relevant and inflames the jury's minds. TRE 104(b), 401, & 402. A fundamental rule of evidence is that the introduction of "evidence of other crimes, wrongs, or acts" are not to be allowed to prove the defendant's guilt. TRE 404(b).

The protection against the introduction of unduly prejudicial evidence under FRE 404(b) emanates not from a requirement of a preliminary finding by the trial court, but rather from four other sources: first, from the requirement of FRE 404(b) that evidence be offered for proper purpose; second, from the relevancy requirement of FRE 402-as enforced through FRE 104(b); third, from the assessment the trial court must take under FRE 403 to determine whether the probative value of the similar acts evidence is substantially outweighed by its potential for unfair prejudice,...and fourth, from FRE 105, which provides that the similar acts evidence is to be considered only for the proper purpose for which it was admitted. Huddleston v. U.S., 485 U.S. 681, 691-92(1988).

Rule 404(b) literally conditions the admissibillity of other-crimes on the State's compliance with the notice provision of Rule 404(b). This is not to say that a trial court is without discretion to utilize its powers (such as granting continuances to reduce surprise to permit the State to bring itself in compliance) and not to excuse noncompliance. Hernandez v. State, 176 S.W. 3d 821, 823-24(Tex.Crim.App. 2005).

The State's comment on stalking during their opening argument is extremely unfair, prejudice, and misleads the jury from the start before evidence is

3.

introduced. The State's comment on stalking should have been excluded because its probative value is substantially outweighed by the danger of unfair prejudice and has a danger of misleading the jury. TRE 403.

A trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. Of course, these factors may well blend together in practice. Gigliobianco v. State, 210 S.W. 3d 637, 641-42 (Tex.Crim.App. 2006).

If, then, relevant evidence is inadmissible in the presence of other evidence related to it, its exclusion must rest not on the ground that other evidence has rendered it "irrelevant," but on its character as unfairly prejudicial, cumulative or the like, its relevance notwithstanding. Old Chief v. U.S., 519 U.S. 172, 179(1997).

The introduction of an unajudicated extraneous offense in the State's opening statement affected the substantial rights of Campos. This prejudiced Campos and had a reasonable probability of affecting the fairness, integrity, and outcome of trial. Relief to this claim is therefore warranted.

GROUND FOR REVIEW

THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO
PRESENT TESTIMONY FROM A PURPORTED "OUTCRY WITNESS"
BECAUSE SOME OF THE STATEMENTS WERE NOT OUTCRY
STATEMENTS AND THEY EXCEEDED THE SCOPE OF THE
OUTCRY NOTICE PURSAUNT TO THE TEXAS CODE OF CRIMINAL
CODE OF CRIMINAL PROCEDURE

4.

REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly established applicable decisions of the Court of Criminal Appeals or the Supreme Court. TRAP 66.3(c). The Trial Court abused its discretion by allowing Jones' testimony to go beyond the scope of an outcry witness. A fair minded jurist would not have allowed Jones to testify beyond the scope of an outcry witness. CCP Art. 38.072.

ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND THREE

Olvera promply made her objection to Jones' testimony preserving the complaint for appeal. TRAP 33.1. The complaint is timely only if the party makes the complain "as soon as the grounds for it become apparent." To be adequately specific, the complaint must "let the trial judge know what he wants and why he is entitled to it." Neal v. State, 256 S.W. 3d 264, 279(Tex.Crim.App. 2008); TRE 103.

A trial court's determination that an outcry statement is admissible under 38.072 is reviewed under an abuse of discretion standard.Garcia v. State, 792 S.W. 2d 88, 91-92(Tex.Crim.App. 1990).

By abusing its discretion in overruling Olvera's objection, the jury was allowed to hear damaging testimony.(RR. V.4 pp.88-90, 140-49). Had the Court sustained Olvera's objection, Jones' damaging testimony wouldn't have been allowed to be heard and used in the jury's consideration of Campos' conviction.

A substantial right is affected when the error had a substantial and injurious effect of influence determining the jury's verdict. King v. State, 953 S.W. 2d 266, 271(Tex.Crim.App. 1997) citing Kotteakos v. U.S., 328 U.S. 750, 776(1946).

Jones testifying beyond the scope of an outcry witness affected the substantial rights of Campos. This prejudiced Campos and had a reasonable

5.

probability of affecting the fairness, integrity, and outcome of trial Relief to this claim is therefore warranted.

## GROUND FOR REVIEW

THE TRIAL COURT ERRED IN ALLOWING TESTIMONY THAT WAS SPECULATIVE AND BEYOND THE SCOPE OF THE EXPERTISE OF THE WITNESS

## REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly established applicable decisions of the Court of Criminal Appeals or the Supreme Court. The Trial Court abused its discretion by allowing Jones to testify on the truthfuness of C.G., going beyond the scope of her qualifications. A fair minded jurist would not have allowed Jones to testify beyond the scope of her qualifications.

## ARGUMENT AND AUTHORITIES OF GROUND FOUR

The State failed to establish a foundation for the reliability of Jones' testimony on the truthfulness of C.G. Although Jones has conducted 1500 forensic interviews, she didn't state any other qualifications or training that qualifies her to give an opinion about C.G.'s truthfulness.(RR. V.5 pp. 146-57). It is simply subjective testimony without any scientific validity by someone who holds a medical degree. Simply put, her testimony is unreliable and misleading. TRE 701 & 702.

TRE 702 does not permit an expert to give an opinion that the complainant or class of persons to which the complainant belongs is truthful. Yont v. State, 872 S.W. 2d 706, 712(Tex.Crim.App. 1993). Expert testimony does not assist the jury if it constitutes a "direct opinion on the truthfulness" of a child complainant's allegations. Schutz v. State, 957 S.W. 2d 51, 59(Tex.Crim. App. 1997).

6.

Before admitting expert testimony, there must be a determination that; (1) the witness qualifies as an expert by reason of his knowledge, skill, experience, training, or education; (2) the subject matter of the testimony is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the fact-finder in deciding the case. These conditions are commonly reffered to as (1) qualifications, (2) reliability, and (3) relevance. Vela v. State, 209 S.W. 3d 128, 130-31(Tex.Crim.App. 2006).

Faced with a proffer of expert scientific testimony,...the trial judge must determine at the outset, pursaunt to FRE 104(c), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails preliminary assesment of whether the reasoning or methodology underlying the testimony is scientifically valid, and of whether that reasoning or methodology can be applied to the facts in issue. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592-93(1993).

Jones' unqualified speculative testimony about C.G.'s truthfulness is not grounded in accepted methods and procedure of science. The jury more than likely overvalued Jones' testimony.

The questions...do not stop if the expert has an M.D. degree. That alone is not enough to qualify him to give an opinion on every conceivable medical question. This is because the inquiary must be into actual qualification.... Christopherson v. Allied-Signal Corperation, 939 F. 2d 1106, 1112-13(5th Cir.), cert. denied, 503 U.S. 912(1992).

Jones' unqualified speculative opinion testimony on C.G.'s truthfulness affected the substantial rights of Campos. This prejudiced Campos and had a reasonable probability of affecting the fairness, integrity, and outcome of trial. Relief to this claim is therefore warranted.

7.

## GROUND FOR REVIEW

THE TRIAL COURT ERRED WHEN IT PERMITTED A STATE'S WITNESS TO
TESTIFY ABOUT BECOMING SUSPICIOUS ABOUT APPELLANT WHERE SHE
FORMULATED HER CONCERN AFTER LEARNING .THE HEARSAY CONTENT OF
TEXT MESSAGES PREVIOUSLY READ BY HER SISTER BUT WHICH WERE
NOT PRESERVED AND NO LONGER IN EXISTENCE

## REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly
established applicable decisions of the Court of Criminal Appeals or the
Supreme Court. TRAP 66.3(c). The Trial Court abused its descretion by allowing
Garcia to testify about third part inadmissible hearsay testimony of unproven
text messages. A fair minded jurist would have sustained Olvera's object and
not allowed Garcia's testimony.

## ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND FIVE

Garcia's testimony of hearsay conversations with Nava about unproven text
messages allegedly from Campos is inadmissible. TRE 801 & 802. Olvera made
multiple objections to this testimony, but the Court improperly overruled them.
(RR. V.4 pp.76, 80-82). The Court originally correctly stated that "all of this
is hearsay, you can't go into that."(RR. v.4 p.79). Its confusing why the Court
changed its mind and allowed Garcia to introduce her harmful "hearsay"
testimony.

As a general matter, FREs 801 & 802 prohibit the admission of an out-of-
court statement offered in evidence to prove the matter asserted. U.S. v.
Williams, 358 F. 3d 956, 963(D.C. Cir. 2004).

Rule 802 is premised on the theory that out-of-court statements are subject
to particular hazards. The declarant might be lying; he might have misperceived
the events which he relates; he might have faulty memory; his words might be
misunderstood or taken out of context by the listener. Williams v. U.S., 512
U.S. 594, 598(1994).

8.

The Court allowing Garcia to testify about third party inadmissible hearsay testimony of unproven messages affected the substantial rights of Campos. This prejudiced Campos and had a reasonable probability of affecting the fairness, integrity, and outcome of trial. Relief to this claim is therefore warranted.

## GROUND FOR REVIEW

THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO INTRODUCE THE CONTENT OF TEXT MESSAGES PURPORTEDLY SENT TO THE COMPLAINANT BY APPEALLANT WHICH THE WITNESS CLAIMED SHE HAD SEEN ON THE COMPLAINANT'S CELL PHONE PRIOR TO THEM BEING DELETED

## REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly established applicable decisions of the Court of Criminal Appeals or the Supreme Court. TRAP 66.3(c). The Trial Court abused its discretion by allowing Nava to testify about unproven text messages. There is no direct or circumstantial corroborating evidence of the existence of the messages. A fair minded jurist would have sustained Olvera's objection and not allowed the harmful testimony.

## ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND SIX

The State did not provide a proper foundation for the text messages admissibility. There was insufficient evidence to prove the messages existed or if they did who authored them. This would be a critical condition prior to their admission. The accusation of the alleged text messages could very well be fabricated. In other words, never existed.

The Trial Court's ruling is inconsistent with the requirement of authentication, a necessary step in laying the foundation for the admission of such evidence. There must be some proof that the messages existed and were actually authored by the person who allegedly sent them.

Without the cell phone-with the alleged messages-preserved, there is no

9.

way to prove they existed or their content. TRE 1002. There is no way to properly authenticate them. TRE 901 & 1001.

Because a person(although not identified in court)generated each text message-that is, the contents are not computer-generated data and therefore not classified as non-hearsay. We consequently conclude that they are hearsay. Further, no hearsay exception justifies the admission of the text messages. Black v. State, 358 S.W. 3d 823, 831(Tex.App.-Fort Worth 2012).

There is a reasonable probability the hearsay testimony left a misplaced inpression on the jury that the contents of the messages existed and from Campos. But, they were nothing more than inadmissible hearsay, not meeting any hearsay exception. TRE 801, 802, 803, & 804.

Consequently, we hold that the contents of the messages were inadmissible hearsay and that the messages were on the cell phone was likewise inadmissible. The trial court therefore abused its discretion by admitting this evidence. Black, 358 S.W. 3d at 832.

Error requires reversal of criminal conviction if it is "highly probable that the errorhad substantial and injurious effect or influence in determining the jury's verdict." Kotteakos, 328 U.S. at 776.

The Trial Court allowing the introduction of the unproven text messages affected the substantial rights of Campos. This prejudiced Campos and had a reasonable probability of affecting the fairness, integrity, and outcome of trial. Relief to this claim is therefore warranted.

## GROUND FOR REVIEW

THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S PRESUMPTION
OF INNOCENCE WHEN IT DENIED APPELLANT'S MOTION FOR
MISTRIAL BASED ON THE COMPAINANT IDENTIFYING A LETTER AS
HAVING COME FROM APPELLANT WHILE APPELLANT WAS IN PRISON

10.

## REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly established applicable decisions of the Court of Criminal Appeals or the Supreme Court. TRAP 66.3(c). The Trial Court abused its discretion by not declaring a mistrial after the State violated the Court's instruction.

## ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND SEVEN

Appellant relies on his argument in his Appeallant Brief and incorporates it here. (Appellant Brief, Ground Seven pp. 40-41).

## GROUNDS FOR REVIEW

[Grounds eight, nine, ten, and eleven will be presented together]

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S "THEUS MOTION" REQUESTING THAT HE BE ALLOWED TO TESTIFY FREE OF IMPEACHMENT

THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO CROSS-EXAMINE APPELLANT CONCERNING A CONVICTION WHICH WAS MORE THAN TEN YEARS OLD

THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO CROSS-EXAMINE APPELLANT ON A MISDEMEANOOR CONVICTION [ASSAULT FAMILY MEMBER NOT A FEMALE] THAT DID NOT CONSTITUTE A CRIME INVOLVING MORAL TURPITUDE

THE TRIAL COURT ERRED WHEN IT ALLOWED THE STATE TO CROSS-EXAMINE APPELLANT ON A MISDEMEANOR CONVICTION [HARBORING A RUN AWAY] THAT DID NOT CONSTITUTE A CRIME INVOLVING MORAL TURPITUDE

## REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly established applicable decisions of the Court of Criminal Appeals or the Supreme Court. TRAP 66.3(c). The Trial Court abused its discretion by overruling Campos' Theus Motion and allowing the State to cross-examine him on his prior convictions. A fair minded jurist would have granted Campos' Theus Motion and not have allowed the State to cross-examine him on his prior convictions.

11.

## ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUNDS
## EIGHT, NINE, TEN, AND ELEVEN

The probative value of the introduction of Campos' prior convictions does not outweigh their prejudicial effect. They had no other effect than to inflame the jury's minds. The jury more then likely placed great weight on Campos' credibility rather than the evidence.

The Court incorrectly weighed the probative value of the introduction of Campos' prior convictions against their prejudicial effect. The record does not establish that the convictions relate to Campos' propensity to testify truthfully such that they can be admitted under TRE 609(a).

Rule 609(a) requires some element of deceit, untruthfulness, or falsification which would tend to show an accused would be likely to testify untruthfully. These elements are not readily apparent in a drug or assault conviction.

If the prior conviction is for an offense relating directly to truthfulness or dishonesty (e.g. perjury, false statement, fraud, embezzlement), its impeachment value is slightly higher than is a conviction for an offense of violence, such as murder, aggravated assault, or a drug offense-all of which are unrelated to credibility or veracity. Theus v. State 845 S.W. 2d 847, 881 (Tex.Crim.App. 1992).

The tacking of Campos' 1992 conviction of aggravated assault with his 2006 conviction of misdemeanor assault is improper. The tacking doctrine found in McClendon v. State, 509 S.W. 2d 851(Tex.Crim.App. 1974) is void. Campos' 1992 conviction should never have been allowed before the jury and used for impeachment purposes.

The rules of evidence subsequently displaced this common-law rule and its accompanying exception by setting explicit standards for the admission of

12

prior convictions for impeachment purposes...we do not find that the current rules tolerate this exception or that the tacking doctrine was intended to survive the creation of the rules. Hankins v. State, 180 S.W. 3d 177, 179-80 (Tex.App.-Austin 2005).

Campos' 2006 misdemeanor assault like his 1992 assault is not a crime of moral turpitude nor can it be used for tacking purposes. The Court failed to cite any authorities to its assumption that it "would think that assaulting a minor child is moral turpitude."(RR. V.6 p.70). The Court also failed to balance its prejudicial effect as well as the other convictions. The Court made an unintelligent ruling with and erronious conclusion of law.

Violent crimes, however, are irrelevant to a witness's character for truthfullness. U.S. v. Parker, 133 F. 3d 322, 327(5th Cir. 1998).

Campos' 2009 conviction of a controlled substance is a victimless crime, not deceptive, and did not involve moral turpitude. These factors weigh against admissibility. It does not require an evil intent and does not require the commission of an act that is of the vileness or depravity needed for a finding that moral turpitude is involved.

Campos' convictions do not necessarily show that he has a propensity for running afoul of the law. It has also been at least four years since Campos' last conviction to the date of trial.

A lack of reformation does not necessarily lead to a conclusion that the probative value of a prior conviction substantially outweighs its prejudicial effect. Hankins, 180 S.W. 3d at 181.

When the State was allowed to impeach Campos, it gave the State the upper hand. The jury was allowed to hear and consider each of Campos' convictions in reaching their decision to convict him.

13.

To analyze harm, we consider the entire record, including testimony, physical evidence, the nature of the evidence supporting the verdict, the character of the alleged error, the State's theory, the defensive theory, and closing arguments. Hankins, 180 S.W. 3d at 181 citing Motilla v. State, 78 S.W. 3d 352, 355(Tex.Crim.App. 2002).

The Trial Court allowing the State to cross-examine Campos on his prior convictions affected the substantial rights of Campos. This prejudiced Campos and had a reasonable probability of affecting the fairness, integrity, and outcome of trial. Relief to this claim is therefore warranted.

## GROUND FOR REVIEW

THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S
OBJECTION TO THE IMPROPER ARGUMENT OF THE PROSECUTOR
SHIFTING THE BURDEN OF PROOF TO APPELLANT

## REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly established applicable decisions of the Court of Criminal Appeals or the Supreme Court. TRAP 66.3(c). The Trial Court abused its discretion by overruling Olvera's objection the the State shifting the burden of proof to Campos.

## ARGUMENT AND AUTHORITIES FOR REVIEW OF GROUND TWELVE

Appellant relies on his argument in his Appellant Brief and incorporates it here.(Appellant Brief, Ground twelve pp.48-49). Appellant would only add the following to support his argument.

The State changed the dynamics of trial when it shifted the burden to Campos.

Burden is on the State in any criminal prosecution to prove beyond reasonable doubt that accused comitted the criminal act charged. McCullen v. State, 372 S.W. 2d 693(Tex.Crim.App. 1964); Hightower v. State, 389 S.W. 2d 674(Tex.Crim.App. 1965).

14.

When the State shifted the burden of proof to Campos it destroyed his presumption of innocense. The so-called presumption of innocence is not an inference based on proven fact; rather, it is an assignment of a burden of proof prior to trial based on the substantive law requiring the State to prove guilt beyond a reasonable doubt. Madrid v. State, 595 S.W. 2d 106, 110(Tex.Crim. App. 1979). The presumption of innocence, although to be articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. Estelle v. Williams, 425 U.S. 501, 503(1976).

## GROUND FOR REVIEW

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT CUMULATED APPELLANT'S SIXTY-EIGHT YEAR PRISON SENTENCES IN CONTRAVENTION OF THE JURY'S ASSESSMENT OF PUNISHMENT AND ALSO IN VIOLATION OF APPELLANT'S RIGHT TO JURY TRIAL

## REASON FOR REVIEW

The Appeals Court's decision is an unreasonable application of clearly established applicable decisions of the Court of Criminal Appeals or the Supreme Court. TRAP 66.3(c). The Trial Court abused its discretion by cumulating Campos' prison sentences in violation of his right to jury trial.

## AREGUMENT AND AUTHORITIES FOR REVIEW OF GROUND THIRTEEN

Appellant relies on his argument in his Appellant's Brief and incorporates it here.(Appellant Brief, Ground Thirteen pp.50-53)

## PRAYER

Appellant respectfully prays that the Honorable Court of Criminal Appeals review his case further and after re-examination reverse his convictions and remand these causes back to the Trial Court for a new trial. Appellant further requests any and all other relief to which he may be legally and justly entitled.

Respectfully submitted.

_____
Javier N. Campos/Appellant
Pro Se Representation
TDCJ No. 1854678
Stiles Unit
3060 FM 3514
Beaummont, Texas 77705


## CERTIFICATE OF SERVICE

I, Javier N. Campos, do hereby certify that a true and correct copy of the above and foregoing Petition For Discretionary Review with a copy of the First Court of Appeals opinion, has been forwarded by U.S. Mail, postage prepaid, first class, to the State Prosecuting Attorney, P.O. Box 12405, Austin, TX. 78711, and the District Attorney for Harris County, 1201 Frankling, Suite 600, Houston, TX. 77002 on the 10th day of April, 2015.

_____
Javier N. Campos-Appellant
Pro Se Represetation


## CERTIFICATE OF FILING

I, Javier N. Campos, do hereby certify the original of the foregoing document with the First Court of Appeals opinion was mailed to the Court of Criminal Appeals to be filed on the 10th day of April 2015.

_____
Javier N. Campos-Appellant
Pro Se Representation

COPY

Opinion issued January 13, 2015



In The

# Court of Appeals

For The

# First District of Texas

---

## NO. 01-13-00415-CR
## NO. 01-13-00416-CR
## NO. 01-13-00417-CR

---

### JAVIER NOEL CAMPOS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1328806, 1328807, 1308988**

---

## OPINION

A jury convicted appellant, Javier Noel Campos, of three counts of the first-degree felony offense of aggravated sexual assault of a child and assessed

punishment at sixty-eight years' confinement for all three cases.[1] The trial court ordered that the sentences for cause numbers 1308988 and 1328806 run concurrently and that the sentence for cause number 1328807 be served consecutively.[2]

In thirteen issues, appellant contends that (1) the State failed to present sufficient evidence that he committed the offense; (2) the trial court erred in overruling his motion for mistrial made when the State referred to an extraneous bad act during opening statements; (3) the trial court erroneously allowed the testimony of the outcry witness to exceed the scope of the information contained in the statutory outcry notice; (4) the trial court erroneously allowed the forensic interviewer to testify to matters outside of her expertise; (5) the trial court erroneously allowed a witness to testify about her suspicions regarding appellant formulated in response to a conversation with another witness; (6) the trial court erroneously admitted the content of text messages through the testimony of a witness when the messages themselves had been deleted; (7) the trial court erroneously denied a motion for mistrial made when the complainant referenced a letter sent to him by appellant while appellant was "in prison"; (8) the trial court

---

[1]    *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i)–(iii) (Vernon Supp. 2014).

[2]    Trial court cause number 1328806 resulted in appellate cause number 01-13-00415-CR. Trial court cause number 1328807 resulted in appellate cause number 01-13-00416-CR. Trial court cause number 1308988 resulted in appellate cause number 01-13-00417-CR.

2

erroneously denied his motion to testify free from impeachment by prior convictions; (9) the trial court erroneously allowed the State to impeach him with a conviction that was more than ten years old; (10)–(11) the trial court erroneously allowed the State to impeach him with two misdemeanor convictions for offenses that did not constitute crimes involving moral turpitude; (12) the trial court erroneously overruled his objection that the State improperly shifted the burden of proof to him during closing argument; and (13) the trial court erroneously cumulated his sentence in cause number 1328807.

We affirm.

## Background

The State indicted appellant for three counts of aggravated sexual assault of a child. The first count alleged that appellant sexually assaulted C.G.J., the complainant, by placing his sexual organ in C.G.J.'s anus. The second count alleged that appellant placed his sexual organ in C.G.J.'s mouth. The third count alleged that appellant caused C.G.J.'s sexual organ to penetrate appellant's mouth. The three indictments all alleged that these acts occurred on or around July 11, 2005.

In the summer of 2005, A.G., her husband, C.W., her ten-year-old son, C.G.J., and her daughter moved into the Embers Apartments in Pasadena. Appellant, who was thirty-three years old at the time, lived in the same apartment

complex. A.G. testified that she thought appellant was polite and a "really nice guy." Appellant offered to help A.G. drive C.G.J. to school, he bought C.G.J. clothes and toys, and A.G. let C.G.J. spend the night with friends at the apartment in which appellant was also living. A.G. noticed that appellant spent more time with C.G.J. than with other children at the apartment complex, but she believed that appellant thought C.G.J. needed a "good role model in his life," and she was grateful for any help appellant could provide.

C.G.J. eventually left the Embers Apartments and went to live with A.G.'s sister, M.N., and her family. Subsequently, A.G. started to become suspicious of appellant. At this point in A.G.'s testimony, the State approached the bench to inform the trial court that appellant had sent C.G.J. some text messages that M.N. had seen and then discussed with A.G. and that appellant had then approached A.G. at work because he had not seen C.G.J. in a while. The State wanted A.G. to testify about her conversation with appellant, but it stated that it needed to set up the fact that A.G.'s opinion of appellant had changed. Defense counsel objected on hearsay grounds to any testimony about the text messages, and she also objected on hearsay grounds to any testimony from A.G. about her opinion of appellant changing after she spoke with M.N. After a lengthy discussion with the State and defense counsel, the trial court stated that it would allow the State to ask A.G. if her attitude toward appellant changed at some point and what caused that

4

attitude shift. The court then said that A.G. could respond that a conversation with M.N. changed her opinion.

In the presence of the jury, the State asked A.G., "[D]id you ever become suspicious of the defendant's interactions with [C.G.J.]?" A.G. responded, "I really became suspicious after a conversation I had with my sister. I had a conversation with my brother-in-law and my sister; and it made me very, very suspicious." A.G. testified that after she had this conversation with M.N., appellant came to see her at work. He was very emotional and was crying, and he apologized to A.G. and told her that "he loved my son and that he just wanted to see him."

In 2011, A.G. and C.G.J. were having a conversation and appellant's name was mentioned. A.G. asked C.G.J. if appellant had "ever tried anything on you." C.G.J. said yes, and A.G. asked him if appellant made C.G.J. have sex with him. C.G.J. again said yes, although he did not give any further details about what had happened. A.G. then took C.G.J. to the Pasadena Police Department to report the offenses.

The State called M.N., and, before she testified, the prosecutor informed the trial court that she would testify about text messages C.G.J. had received from appellant. The trial court then held a hearing outside the presence of the jury to elicit testimony from M.N. concerning how she knew the text messages came from

5

appellant. M.N. identified appellant in court, and she testified that when C.G.J. came to live with her he had a cell phone that appellant had given him. She testified that C.G.J. referred to appellant as "Godfather," that C.G.J. did not refer to anyone else by this name, that the name associated with appellant on C.G.J.'s cell phone was "Godfather," and that she had seen text messages on the phone from "Godfather." M.N. saw text messages from "Godfather" stating, "Why haven't you called me? I miss you. I can't live without you. Why are you doing this to me?"

M.N. testified that, based on the text messages, she confronted appellant, warned him to stay away from C.G.J., and told him that she would contact the police. Appellant did not deny sending those messages. Later that day, M.N. asked C.G.J. if she could see his phone, but he had already deleted the text messages at appellant's direction. M.N. filed a police report against appellant for stalking.[3] Defense counsel objected to M.N.'s testimony concerning the text messages on both hearsay and authentication grounds. The trial court ruled: "I

---

[3] The prosecutor referenced this incident in its opening statement by stating, "And you're going to hear how [M.N. and her husband] finally confronted [appellant] and did more than that. They went and filed a police report against him for stalking." Defense counsel objected, arguing that the stalking incident "has nothing to do with any intent to any sex act or to any sex crime." The trial court stated that the stalking offense "shows [appellant's] incredible focus on this one child and his relationship with the child." The trial court overruled the objection and appellant's subsequent motion for mistrial.

6

find that there is sufficient authentication. And, of course, an admission [of a party opponent] is an exception to the hearsay rule. So your objection is overruled."

Before the jury, M.N. testified that she had concerns about appellant's relationship with C.G.J. because appellant "obviously was way too old to be hanging out with my nephew." She thought it "wasn't good for [C.G.J.]" that he was at appellant's apartment all the time. M.N. testified that she had observed negative changes in C.G.J.'s behavior, such as an increasing amount of anger, and that he had been performing very poorly in school before coming to live with her family. She testified that she did not allow C.G.J. to have contact with appellant, but because appellant had given C.G.J. a cell phone they were still in contact via text message. She stated that she saw text messages on C.G.J.'s phone from appellant that read, "Why aren't you picking up? Do you not love me? I feel sick without you." M.N. confronted appellant, who did not deny sending the text messages, and she then filed a police report against appellant. C.G.J. never said anything to M.N. about being sexually abused.

Stephanie Jones, with the Children's Assessment Center, conducted C.G.J.'s forensic interview. The State identified Jones as a person to whom C.G.J. had made an outcry in a pretrial "Notice of Intention to Use Child Abuse Victim's Hearsay Statement." In that notice, the State summarized C.G.J.'s statements to Jones as follows:

On or about May 9, 2011, the complainant told Stephanie Jones, that the defendant had befriended him and treated him like a son. The defendant had him stand in front of a window and the defendant performed oral sex on the complainant. The complainant further stated that the defendant took advantage of him and raped him. The defendant stated that he had already seen the complainant's penis so he should show it to him. The complainant told Stephanie Jones that the defendant touched his penis. The complainant also stated that if he did sexual favors for the defendant he would buy him things. The complainant stated that he performed oral sex on the defendant. Also, the defendant would masturbate while looking at the complainant and tell the complainant "he had a nice ass." Also, the defendant placed his penis inside the complainant's anus and licked his anus.

Before Jones testified, defense counsel made the following objection: "My complaint is that according to the notice, that some of those statements are not outcry statements pursuant to 38.071 about a crime or a wrong describing any sex acts." In overruling appellant's objection, the trial court stated: "I found that the outcry statement made to the child's mother is reliable, that the probative value outweighs the prejudicial value, and that adequate notice was given under the outcry statute."

Jones testified that C.G.J. appeared "very nervous" at the beginning of his forensic interview, but that he gave detailed responses to her open-ended questions. The following exchange occurred during her direct examination:

| [The State]: | Did he describe the abuse? |
| [Jones]: | Yes. |
| [The State]: | What did he say? |

| | |
|---|---|
| [Jones]: | The first time it happened, he was at an apartment where he— |
| [Defense counsel]: | Objection, Your Honor. This is outside the scope of the actual statement that was— outcry statement we discussed earlier. |
| The Court: | I don't recall exactly what you said about that, just other statement. May I see the notice? Thank you. Your objection is overruled. |

Jones testified that C.G.J. described the abuse. C.G.J. told Jones that he was sleeping at appellant's apartment, that appellant woke him up, told him to look out the window to make sure no one was coming, and performed oral sex on him. C.G.J. also told Jones that sexual abuse happened on other occasions. C.G.J. told Jones that, on some occasions, appellant made him perform oral sex on appellant, and on other occasions appellant would anally penetrate him. C.G.J. indicated that all of these acts occurred on more than one occasion. C.G.J. was able to provide details concerning the acts of abuse, he described watching pornographic videos with appellant, and he described how appellant would promise him gifts in exchange for performing sexual acts.

The State asked Jones whether C.G.J.'s responses were "consistent with a child that had been sexually abused." Defense counsel objected on speculation grounds and on the basis that Jones "is not an expert with respect to making that evaluation." The trial court informed the State, "You will need to qualify her." Jones testified that she did not know the exact number of forensic interviews that

9

she had conducted, but she estimated that, in eighteen months, she had conducted over 1500.[4] She also testified that she has seen children not disclose any abuse, that children sometimes give answers inconsistent with someone who has been sexually abused, and that children sometimes give answers consistent with sexual abuse. The State again asked Jones whether C.G.J. gave answers consistent with someone who had been sexually abused. Defense counsel again objected:

> She's not qualified to make this assessment. It's out of the scope of her training. She has stated that she has only given 1500 interviews within an 18-month period of time. That doesn't make her an expert with respect to making that particular evaluation.

The trial court overruled this objection. Jones testified that she believed C.G.J.'s answers and demeanor were consistent with a child who had been sexually abused.

C.G.J. testified that he moved into the Embers Apartments with his family during the summer following his fifth-grade year and that he met appellant while playing outside at the complex. C.G.J. testified that appellant bought him clothing and toys, that appellant would take him and other children from the apartment complex on fishing trips, and that he viewed appellant as a father figure. Eventually, appellant started spending time alone with C.G.J., and appellant would

---

[4] Jones also stated, at the beginning of her testimony, that she had a master's degree in social work, that she has training in forensic interviewing "as well as domestic violence and trauma," and that she had worked as an investigator with Child Protective Services before becoming a forensic interviewer at the Children's Assessment Center.

show C.G.J. pornographic magazines and videos. This behavior then escalated to sexual abuse.

C.G.J. testified that, on the first occasion of sexual abuse, appellant performed oral sex on him. Appellant later forced him to perform oral sex on appellant, and both of these acts occurred on at least twelve occasions over the course of the summer. Eventually, appellant's conduct escalated to the point of anally penetrating C.G.J. C.G.J. testified that he did not immediately tell anyone because he was embarrassed and afraid that appellant would hurt him and his family. He also testified that appellant referred to him as his son and that he made C.G.J. feel special. He stated that appellant also has a tattoo of C.G.J.'s face on his arm and that he was present when appellant got that tattoo.

The State asked C.G.J. whether appellant sent him letters in addition to text messages. C.G.J. responded that he did. The State asked C.G.J. to identify State's Exhibit 14, a letter dated July 2007, which he did by saying, "Letters from [appellant] being in prison." The trial court immediately sustained defense counsel's objection and instructed the jury to disregard C.G.J.'s statement. The trial court denied appellant's motion for mistrial. The trial court then admitted a redacted copy of Exhibit 14. C.G.J. testified that appellant had written "SWAK" on the envelope, which appellant, in the letter, clarified meant "sealed with a lot of kisses." C.G.J. also testified that the letter included such statements as "Love you,

11

[C.G.J.]," "Thinking of you" with a heart, and "If you care, mijo, find me a picture of you and send it with your next letter. Okay? I really miss seeing you. I miss your hugs and kisses."

Appellant called three people who had also lived at the Embers Apartments as witnesses on his behalf: Sergio Lara, I.G.,[5] and Kanny Duenas. I.G. and Duenas were approximately the same age as C.G.J. and testified that they would often play with him around the apartment complex. All three witnesses testified that appellant was like a father figure to them. Lara testified that he has a tattoo representing appellant, that appellant has one representing him, and that appellant has sent him letters before that said "sealed with a kiss." I.G. testified that appellant routinely took them on fishing trips and that he would buy food, clothing, toys, and sporting equipment for all of the children at the apartment complex. I.G. stated that appellant also has a tattoo representing I.G. and I.G.'s daughter on his arm. All three witnesses testified that appellant appeared to have an appropriate relationship with C.G.J.

Appellant testified on his own behalf. Before he testified, the trial court held a hearing on appellant's motion to testify free from impeachment by prior convictions. The State proposed impeaching appellant with four prior convictions:

_____

[5] In 2004, appellant was convicted of harboring a runaway child, I.G., and in 2006, he was convicted of misdemeanor assault on a family member, and I.G. was the complainant. Because I.G. was a minor at the time of these offenses, we refer to him by his initials.

12

a 2009 felony conviction for possession of a controlled substance, a 2006 misdemeanor conviction for assault on a family member, a 2004 misdemeanor conviction for harboring a runaway child, and a 1992 felony conviction for aggravated assault. Appellant argued that the State could not establish that the probative value of these convictions outweighed their prejudicial effect. Appellant also argued that the State could not use either of the misdemeanor convictions for impeachment because those offenses did not involve moral turpitude, and he argued that the 1992 conviction was too remote to use for impeachment. The trial court found that both misdemeanor convictions involved moral turpitude and that the 2006 misdemeanor conviction "tacked onto" the 1992 conviction, making it not remote. The trial court allowed the State to use all four prior convictions for impeachment.[6]

Appellant testified that after Garcia and her family moved to the Embers Apartments, he tried to include C.G.J. in activities with the other children at the complex. Appellant testified that C.G.J., I.G., and Kanny Duenas were all "like a

---

[6] The State asked appellant about these convictions on cross-examination. The trial court, at defense counsel's request, instructed the jury that it could consider appellant's prior convictions only for the purpose of determining his credibility. The trial court included a substantially similar instruction in the written charge. The State later asked appellant to clarify that the runaway child he harbored in 2004 and the complainant in the misdemeanor assault conviction was I.G., who had already testified. The State mentioned the 2004 harboring a runaway child conviction once more during closing arguments when it summarized I.G.'s testimony supporting appellant.

13

little son" to him and that he missed C.G.J. after his family moved from the apartment complex, which is why he got a tattoo that represented C.G.J. Appellant denied ever having sexual contact with C.G.J. or doing anything inappropriate with him.

During closing arguments, the State summarized C.G.J.'s testimony concerning his outcry to Garcia, his subsequent meeting with the police, and his forensic interview. The prosecutor stated, "Now, has Defense counsel offered any evidence—anything to suggest why a 16-year-old boy would make this up?" Defense counsel objected "to any reference as to why. We have no burden of proof." The trial court overruled defense counsel's objection.

The jury found appellant guilty of three counts of aggravated sexual assault of a child and assessed punishment at sixty-eight years' confinement for each count. The State filed a motion to cumulate the sentences pursuant to Penal Code section 3.03. The trial court granted the State's motion and ordered appellant's convictions in cause numbers 1308988 and 1328806 to run concurrently and his conviction in cause number 1328807 to be cumulated and to begin after appellant completes his sentences for cause numbers 1308988 and 1328806. This appeal followed.

## Sufficiency of the Evidence

In his first issue, appellant contends that the State failed to present sufficient evidence that he sexually assaulted C.G.J.

### A. Standard of Review

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence). The jurors are the exclusive judges of the facts and the weight to be given to the testimony. *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008). A jury, as the sole judge of credibility, may accept one version of the facts and reject another, and it may reject any part of a witness's testimony. *See Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *see also Henderson v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete

deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

### B. Aggravated Sexual Assault of a Child

To establish that appellant committed the offenses of aggravated sexual assault of C.G.J. as charged in the indictments, the State had to prove that appellant intentionally or knowingly (1) penetrated C.G.J.'s anus with his sexual organ; (2) penetrated C.G.J.'s mouth with his sexual organ; and (3) caused C.G.J.'s sexual organ to penetrate his mouth. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i)–(iii) (Vernon Supp. 2014).

A conviction for aggravated sexual assault of a child is "supportable on the uncorroborated testimony of the victim of the sexual offense." TEX. CODE CRIM. PROC. ANN. art. 38.07(a) (Vernon Supp. 2014); *Martinez v. State*, 178 S.W.3d 806, 814 (Tex. Crim. App. 2005) (noting that article 38.07 "deals with the *sufficiency* of evidence required to sustain a conviction for" certain sexual offenses) (emphasis in original). The State has no burden to produce any corroborating or physical

16

evidence. *Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004) ("The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence."), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006). Likewise, a child victim's outcry statement alone can be sufficient to support a sexual assault conviction. *See Jones v. State*, 428 S.W.3d 163, 169 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Tear v. State*, 74 S.W.3d 555, 560 (Tex. App.—Dallas 2002, pet. ref'd).

Here, C.G.J. testified that he met appellant during the summer between his fifth and sixth grade years of school when he moved into a new apartment complex and that appellant would often play with the children at the complex and would buy them gifts. C.G.J. viewed appellant as a father figure, and appellant referred to him as his son. Appellant showed C.G.J. pornographic magazines and videos, and this behavior eventually escalated to sexual abuse. C.G.J. testified unequivocally that appellant performed oral sex on him, that appellant forced him to perform oral sex on appellant, and that appellant penetrated his anus with his sexual organ. C.G.J. estimated that appellant performed these acts on at least twelve occasions over the summer. C.G.J. testified that he did not tell anyone about the abuse when it occurred because he was scared and embarrassed.

C.G.J. testified to the essential elements of each of the three charged offenses of aggravated sexual assault of a child. *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(B)(i)–(iii). His testimony, standing alone, is sufficient to sustain appellant's convictions. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07(a); *Jones*, 428 S.W.3d at 169; *Martines*, 371 S.W.3d at 240; *Lee*, 176 S.W.3d at 458. Moreover, Stephanie Jones, the forensic interviewer and one of the State's outcry witnesses, testified that C.G.J. disclosed that appellant had sexually abused him by performing oral sex on him, forcing him to perform oral sex on appellant, and penetrating his anus. C.G.J.'s outcry statement is also sufficient, standing alone, to sustain a sexual assault conviction. *See Jones*, 428 S.W.3d at 169; *Tear*, 74 S.W.3d at 560.

In arguing that the State failed to present sufficient evidence, appellant points to several facts that, he contends, render the evidence insufficient. For example, he points out that C.G.J. did not make an outcry until approximately six years after the abuse occurred; on an earlier occasion, C.G.J. denied that appellant had abused him; C.G.J. never told anyone at his school or any family members that he had been abused; and C.G.J. had six years' worth of "normal" medical examinations that did not indicate that any abuse had occurred. All of these points impact C.G.J.'s credibility. C.G.J. unequivocally testified that appellant committed acts constituting aggravated sexual assault, and his testimony alone is

18

sufficient to support the conviction. *See, e.g., Jones,* 428 S.W.3d at 169. The jury heard the evidence, credited C.G.J.'s testimony, and found appellant guilty. We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *See Williams,* 235 S.W.3d at 750; *see also Lancon,* 253 S.W.3d at 705 (stating that we afford almost complete deference to jury's credibility determinations).

Appellant also points to alleged deficiencies in Pasadena Police Department Detective T. Brinson's investigation as facts rendering the evidence insufficient. For example, he argues that Detective Brinson failed to visit the apartment where the abuse occurred, he did not interview appellant's neighbors, he did not examine C.G.J.'s cell phone, and he did not obtain C.G.J.'s school records or speak to any of his teachers or classmates. However, in sexual assault of a child cases, the State has no burden to present any corroborating or physical evidence of the abuse. *Jones,* 428 S.W.3d at 169; *Martines,* 371 S.W.3d at 240; *Lee,* 176 S.W.3d at 458.

Furthermore, appellant argues that when Detective Brinson confronted him with C.G.J.'s allegations he immediately and emphatically denied abusing C.G.J. and that other witnesses at the apartment complex—Sergio Lara, I.G., and Kanny Duenas—never observed anything inappropriate occurring between appellant and C.G.J. It was within the province of the jury to weigh appellant's testimony, the testimony of his defensive witnesses, and C.G.J.'s testimony; and it could choose

to believe or disbelieve all or any part of any witness's testimony. *See Bartlett*, 270 S.W.3d at 150; *Sharp*, 707 S.W.2d at 614; *Henderson*, 29 S.W.3d at 623. In finding appellant guilty, the jury implicitly credited C.G.J.'s testimony over that of appellant and his witnesses. We will not re-evaluate this credibility determination. *See Lancon*, 253 S.W.3d at 705; *Williams*, 235 S.W.3d at 750.

Viewing the evidence in the light most favorable to the verdict, we conclude that the State presented sufficient evidence to support appellant's conviction for three counts of aggravated sexual assault of a child.

We overrule appellant's first issue.

## Denial of Motions for Mistrial

In his second issue, appellant contends that the trial court erred in overruling his motion for mistrial made when the State referenced an extraneous bad act during its opening statement. In his seventh issue, appellant contends that the trial court erred in overruling his motion for mistrial made when C.G.J. identified an exhibit as a letter he had received from appellant while appellant was "in prison."

### A. Standard of Review

We review a trial court's denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). We will uphold the trial court's ruling if it falls within the zone of reasonable disagreement. *Id.* (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)). A

20

mistrial is required only in extreme circumstances, when the prejudice is incurable. *Id.* (citing *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004)). Mistrial is an appropriate remedy when the objectionable events "are so emotionally inflammatory that curative instructions are not likely to prevent the jury from being unfairly prejudiced against the defendant." *Archie v. State*, 340 S.W.3d 734, 739 (Tex. Crim. App. 2011) (quoting *Young v. State*, 137 S.W.3d 65, 71 (Tex. Crim. App. 2004)).

### B. Extraneous Bad Acts Mentioned in Opening Statement

During the State's opening statement, the prosecutor described how M.N., C.G.J.'s aunt, became suspicious of appellant and invited C.G.J. to live with her family away from the Embers Apartments. He also described how appellant bought C.G.J. a cell phone and continued to try to contact C.G.J. The prosecutor stated, "And you're going to hear how [M.N. and her husband] finally confronted [appellant] and did more than that. They went and filed a police report against him for stalking." Defense counsel objected, arguing that the statement was "outside the scope of opening" and in violation of an earlier motion in limine ruling.

Outside the presence of the jury, defense counsel argued that the prosecutor's statement referred to "a stalking incident that the aunt went to the police station to talk to the police about a harassment, nothing more. It has nothing to do with any intent to [commit] any sex act, or to any sex crime." In response,

21

the State argued that "the essence of this stalking charge goes to prove the relationship between the defendant and the complainant." The trial court noted that the stalking incident "shows [appellant's] incredible focus on this one child and his relationship with the child." The trial court overruled appellant's objection to the statement and then denied his subsequent motion for mistrial.

The State's opening statement shall inform the jury of "the nature of the accusation and the facts which are expected to be proved by the State in support thereof." TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3) (Vernon 2007); *Ford v. State*, 444 S.W.3d 171, 197 (Tex. App.—San Antonio 2014, pet. filed) ("[T]he State has a statutory right to present to the jury its accusations against the defendant and the facts that support it . . . ."). When evidence is admissible, no error occurs when the prosecution refers to that evidence during opening statements. *See Watts v. State*, 630 S.W.2d 737, 738 (Tex. App.—Houston [1st Dist.] 1982, no pet.) (stating that because complainant could permissibly testify to identification of defendant in pre-trial photo array and line up, prosecution could permissibly refer to such during opening statement).

Code of Criminal Procedure article 38.37, section 1(b) provides, in aggravated sexual assault of a child cases:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

22

> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b) (Vernon Supp. 2014); *see Jones v. State*, 119 S.W.3d 412, 420 (Tex. App.—Fort Worth 2003, no pet.) (holding evidence of extraneous bad acts committed against indecency with child complainant was admissible under article 38.37 to show states of mind and previous and subsequent relationship between defendant and complainant); *Hitt v. State*, 53 S.W.3d 697, 705 (Tex. App.—Austin 2001, pet. ref'd) (noting that, in certain sexual abuse cases, article 38.37 supersedes Rules 402, 404, and 405). Thus, under this section, the State may permissibly introduce testimony involving the defendant's extraneous bad acts when that evidence is relevant "to demonstrate the unnatural attitude and relationship" between a defendant and his child victim. *See Sanders v. State*, 255 S.W.3d 754, 759 (Tex. App.—Fort Worth 2008, pet. ref'd); *Jones*, 119 S.W.3d at 420; *see also Ernst v. State*, 971 S.W.2d 698, 700 (Tex. App.—Austin 1998, no pet.) ("[W]e hold that the victim's testimony of other [extraneous] sexual conduct inflicted by appellant was relevant to show appellant's state of mind and the previous relationship between appellant and the victim.").

Here, one of the State's theories at trial was that appellant had an inappropriate attachment to and fixation on C.G.J. During its case-in-chief, the

23

State elicited testimony from M.N. that after the abuse had occurred but before C.G.J. made an outcry she filed a police report against appellant following her discovery that appellant had been communicating with C.G.J. via cell phone.[7] This extraneous evidence of appellant's bad acts toward C.G.J. was admissible to demonstrate the subsequent relationship between appellant and C.G.J. *See* TEX. CODE CRIM. PROC. ANN. art. 38.37, § 1(b)(2); *Sanders*, 255 S.W.3d at 759; *Jones*, 119 S.W.3d at 420. Because this evidence was admissible, the trial court permissibly allowed the State to refer to this evidence during its opening statement. *See* TEX. CODE CRIM. PROC. ANN. art. 36.01(a)(3); *Ford*, 444 S.W.3d at 197; *Watts*, 630 S.W.2d at 738.

We hold that the trial court did not abuse its discretion in denying appellant's motion for mistrial on this basis.

### C. Testimony That Appellant Sent Letter to C.G.J. While "In Prison"

During direct-examination of C.G.J., the State asked him whether appellant had sent him letters. C.G.J. replied that he had. The State showed C.G.J. State's Exhibit 14 and asked him to identify it. C.G.J. responded, "Letters from him being in prison." Defense counsel objected, and the trial court instructed the jury to disregard C.G.J.'s statement. The trial court then denied appellant's motion for mistrial. On appeal, appellant contends that this testimony violated his

---

[7] We note that appellant does not challenge the admissibility of M.N.'s testimony concerning the police report on appeal.

24

presumption of innocence and that the trial court erred in denying his motion for mistrial.

Penal Code section 2.01 provides that "[a]ll persons are presumed to be innocent" and "[t]he fact that [a person] has been arrested, confined, or indicted for, or otherwise charged with, the offense gives rise to no inference of guilt at his trial." TEX. PENAL CODE ANN. § 2.01 (Vernon 2011); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.03 (Vernon Supp. 2014) (providing same). The "presumption of innocence" is "an assignment of a burden of proof prior to trial based on the substantive law requiring the State to prove guilt beyond a reasonable doubt." *Madrid v. State*, 595 S.W.2d 106, 110 (Tex. Crim. App. 1979); *see also Rideau v. State*, 751 S.W.2d 248, 250 (Tex. App.—Beaumont 1988, no pet.) ("[T]he presumption [of innocence] serves as a reminder to the jury of the state's burden to prove its case and as a caution that they are to consider nothing but the evidence in passing upon the accused's guilt."). "When a jury is told of the presumption [of innocence], it is told, in effect, to judge an accused's guilt or innocence solely on the basis of the evidence adduced at trial and not on the basis of suspicions that may arise from the fact of his arrest, indictment, or custody." *Miles v. State*, 204 S.W.3d 822, 825 (Tex. Crim. App. 2006).

As the State points out, the letter contained within Exhibit 14 was dated July 2007, and C.G.J. did not make his outcry in this case until 2011. Thus, C.G.J.

received the letter contained in Exhibit 14 while appellant was incarcerated on another offense, not while appellant was incarcerated pending trial on the charged offense. We therefore conclude that C.G.J.'s testimony that Exhibit 14 was a letter from appellant sent while he was "in prison" does not implicate the presumption of innocence. *See id.* (stating that purpose of presumption of innocence is to ensure that jury makes its determination based on evidence presented at trial and not based on fact that defendant has been arrested or indicted or held in custody); *Madrid*, 595 S.W.2d at 110 (stating that presumption of innocence is pre-trial assignment of burden of proof requiring State to prove guilt beyond reasonable doubt).

To the extent that it was improper for C.G.J. to refer to appellant's having been incarcerated for a prior conviction, we note that, when defense counsel objected to C.G.J.'s testimony, the trial court promptly instructed the jury to disregard C.G.J.'s statement. The Court of Criminal Appeals has held that it is "well-settled" that

> testimony referring to or implying extraneous offenses can be rendered harmless by an instruction to disregard by the trial judge, unless it appears the evidence was so clearly calculated to inflame the minds of the jury or is of such damning character as to suggest it would be impossible to remove the harmful impression from the jury's mind.

*Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *Nobles v. State*, 843 S.W.2d 503, 514 (Tex. Crim. App. 1992) (stating that "inadvertent references to prior incarceration can be cured of prejudicial effect" and holding that trial court's

26

"prompt and thorough instruction" to disregard witness's reference to defendant not wanting to go "back to prison" cured any error); *Gardner v. State*, 730 S.W.2d 675, 697 (Tex. Crim. App. 1987) (holding that while witness's reference to defendant's prior incarceration was "undoubtedly inadmissible and prejudicial testimony" that had no relevance to guilt-innocence phase of trial, "that bare fact, unembellished, was not so inflammatory as to undermine the efficacy of the trial court's instruction to disregard it").

Here, C.G.J. identified State's Exhibit 14 as "[l]etters from [appellant] being in prison." The trial court immediately sustained defense counsel's objection and instructed the jury to disregard C.G.J.'s statement. C.G.J. made no further references to receiving letters from appellant while he was incarcerated. Moreover, because appellant later testified on his own behalf, his prior criminal history, and the fact that he had been previously incarcerated, became relevant and admissible to impeach his credibility. Thus, we conclude that the trial court's instruction to disregard cured any prejudice stemming from C.G.J.'s "uninvited and unembellished" statement. *See Kemp*, 846 S.W.2d at 308 ("We find the uninvited and unembellished reference to appellant's prior incarceration—although inadmissible—was no[t] so inflammatory as to undermine the efficacy of the trial court's instruction to disregard."). We hold that the trial court did not abuse its discretion in denying appellant's motion for mistrial on this basis.

We overrule appellant's second and seventh issues.

## Outcry Testimony

In his third issue, appellant contends that the trial court erred in allowing some of the testimony by forensic interviewer Stephanie Jones because the challenged statements exceeded the scope of the statutory outcry notice provided by the State.

Code of Criminal Procedure article 38.072 provides a statutory exception to the hearsay rule for outcry statements made by a child victim of a sexual offense. TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2 (Vernon Supp. 2014); *see Sanchez v. State*, 354 S.W.3d 476, 484 (Tex. Crim. App. 2011) ("When a defendant is charged with certain offenses against a child under the age of 14 or a disabled individual, Article 38.072 allows into evidence the complainant's out-of-court statement so long as that statement is a description of the offense and is offered into evidence by the first adult the complainant told of the offense."). For the outcry statement to be admissible, article 38.072 requires that before the fourteenth day before the proceeding the State must notify the defendant of its intention to offer the statement, provide the defendant with the name of the witness through whom it wishes to offer the statement, and provide the defendant with "a written summary of the statement." TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(b); *Sanchez*, 354 S.W.3d at 484 ("The State must provide a summary of the outcry statement that

28

will be offered into evidence."). The trial court has broad discretion in determining the admissibility of outcry testimony. *Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Smith v. State*, 131 S.W.3d 928, 931 (Tex. App.—Eastland 2004, pet. ref'd).

The purpose of the article 38.072 notice requirement is to prevent the defendant from being surprised by the introduction of the outcry testimony. *Gay v. State*, 981 S.W.2d 864, 866 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd). The written summary must give the defendant adequate notice of the content and scope of the outcry testimony. *Id.* The outcry statement must "describe the alleged offense in some discernible manner," and the statement is sufficient if it "reasonably informs the defendant of the essential facts related in the outcry statement." *Davidson v. State*, 80 S.W.3d 132, 136 (Tex. App.—Texarkana 2002, pet. ref'd). A trial court does not err in admitting hearsay statements not contained in the outcry notice if those statements describe "the circumstances leading up to the outcry statement and its details." *Gottlich v. State*, 822 S.W.2d 734, 737 (Tex. App.—Fort Worth 1992, pet. ref'd), *disapproved of on other grounds by Curry v. State*, 861 S.W.2d 479 (Tex. App.—Fort Worth 1993, pet. ref'd). Any error in the substance of an outcry notice is harmless when there is no indication that the defendant was surprised by the outcry testimony. *Owens v. State*, 381 S.W.3d 696, 704 (Tex. App.—Texarkana 2012, no pet.).

29

Here, before trial, the State provided appellant with a notice of its "Intention to Use Child Abuse Victim's Hearsay Statement." This notice included the following summary with regard to what C.G.J. told Stephanie Jones:

> On or about May 9, 2011, the complainant told Stephanie Jones, that the defendant had befriended him and treated him like a son. The defendant had him stand in front of a window and the defendant performed oral sex on the complainant. The complainant further stated that the defendant took advantage of him and raped him. The defendant stated that he had already seen the complainant's penis so he should show it to him. The complainant told Stephanie Jones that the defendant touched his penis. The complainant also stated that if he did sexual favors for the defendant he would buy him things. The complainant stated that he performed oral sex on the defendant. Also, the defendant would masturbate while looking at the complainant and tell the complainant "he had a nice ass." Also, the defendant placed his penis inside the complainant's anus and licked his anus.

At trial, before Jones testified, defense counsel made the following objection: "My complaint is that according to the [statutory] notice, that some of those statements are not outcry statements pursuant to 38.071 about a crime or a wrong describing any sex acts." The trial court did not rule on this objection at the time, other than to state that "adequate notice was given under the outcry statute.

During Jones's testimony, the State asked her about the forensic interview she conducted with C.G.J., and the following exchange occurred:

| [The State]: | Did [C.G.J.] describe the abuse? |
| [Jones]: | Yes. |
| [The State]: | What did he say? |

30

| [Jones]: | The first time it happened, he was at an apartment where he— |
| [Defense counsel]: | Objection, Your Honor. This is outside the scope of the actual statement that was— outcry statement we discussed earlier. |
| The Court: | I don't recall exactly what you said about that, just other statement. May I see the notice? Thank you. Your objection is overruled. |

Jones then testified, in detail and without further objection, concerning C.G.J.'s outcry statement to her in the forensic interview. Defense counsel did not request a running objection on Jones's testimony regarding C.G.J.'s statements made during the forensic interview.

Because appellant did not request a running objection and did not object to any further testimony from Jones concerning what C.G.J. told her in the forensic interview, appellant did not preserve any error with regard to whether these statements exceeded the scope of the outcry notice. *See Davidson*, 80 S.W.3d at 138 ("Davidson did not renew his objection, and he had not requested a running objection; therefore, Davidson did not preserve error as to this further testimony."). Thus, the sole question on appeal is whether the trial court erred in allowing Jones to testify that C.G.J. told her that the first instance of abuse occurred in an apartment. This statement does not describe any act of abuse in particular; instead, it is a contextual statement that describes the circumstances surrounding the charged conduct. We conclude the objected-to statement describes "the

31

circumstances leading up to the outcry statement and its details," and therefore the trial court did not err by overruling appellant's objection to this testimony. *See Gottlich*, 822 S.W.2d at 737. We hold that the trial court did not abuse its discretion in allowing Jones to testify as an outcry witness concerning C.G.J.'s statements made during his forensic interview.[8]

We overrule appellant's third issue.

## Testimony Beyond Scope of Witness's Expertise

In his fourth issue, appellant contends that the trial court erred in allowing Jones to testify that C.G.J.'s responses during the forensic interview were consistent with a child who had been sexually abused because this testimony was speculative and beyond Jones's expertise.

Rule of Evidence 702 provides that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise." TEX. R. EVID. 702; *Bryant v. State*, 340 S.W.3d 1, 7 (Tex. App.—

---

[8] We also note that, although the trial court did not admit the video of the forensic interview into evidence, the State represented that defense counsel had had the opportunity to view the video before trial. Moreover, appellant did not argue, either at trial or on appeal, that he was surprised by Jones's testimony. *See Owens v. State*, 381 S.W.3d 696, 704 (Tex. App.—Texarkana 2012, no pet.) (holding that any error in substance of outcry notice is harmless when there is no indication that defendant was surprised by outcry testimony).

Houston [1st Dist.] 2010, pet. ref'd). "To be qualified to give expert opinion testimony, the witness 'must possess some additional knowledge or expertise beyond that possessed by the average person, but the gap need not necessarily be monumental.'" *Bryant*, 340 S.W.3d at 7 (quoting *Davis v. State*, 313 S.W.3d 317, 350 (Tex. Crim. App. 2010)).

We review a trial court's ruling regarding expert qualifications and the admissibility of expert testimony for an abuse of discretion. *Lagrone v. State*, 942 S.W.2d 602, 616 (Tex. Crim. App. 1997). A trial court abuses its discretion only when its decision was "so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992); *see Hernandez v. State*, 53 S.W.3d 742, 750 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd) ("A reviewing court cannot conclude that a trial court abused its discretion if, in the same circumstances, it would have ruled differently or if the trial court committed a mere error in judgment.").

In *Hernandez*, this Court recognized that a witness's field of expertise, which concerned the "dynamics and common characteristics of a sexually abused child," was "certainly legitimate." 53 S.W.3d at 750–51. We noted that the expert, who was the executive director of the Advocacy Center for Children in Galveston County, based her opinions on her "extensive experience observing children in thousands of cases." *Id.* We also stated, "Due to her superior

33

knowledge concerning the behavior of children who have suffered sexual abuse, 'Child Abuse Accommodation Syndrome' and the common characteristics and dynamics of sexually abused children are matters within the scope of her expertise." *Id.* at 751; *see also Bryant*, 340 S.W.3d at 9–10 (holding that police investigator was qualified as expert to testify concerning concept of grooming); *Reynolds v. State*, 227 S.W.3d 355, 372 (Tex. App.—Texarkana 2007, no pet.) (noting that witness was licensed professional counselor, licensed marriage and family therapist, was trained in forensic interviewing, and had been director of Northeast Texas Child Advocacy Center, and holding that witness's testimony that she had not observed anything in complainant's behavior to indicate coaching and her testimony concerning delayed-outcry phenomenon was "within the scope of her field of expertise"). This Court has also previously held that an expert in the field of child sexual abuse "can testify to background patterns found in exploited children and can offer opinions of whether the complainant's statements demonstrate a pattern consistent with other exploited children, but cannot offer expert opinions of the child's truthfulness."[9] *Dennis v. State*, 178 S.W.3d 172, 182

---

[9] We note that the Court of Criminal Appeals has drawn a distinction between expert testimony that a particular child's behavior is consistent with the general behavior of children who have been sexually abused and testimony that is a direct opinion on the truthfulness of a particular child. *See Yount v. State*, 872 S.W.2d 706, 708–09 (Tex. Crim. App. 1993). The Court of Criminal Appeals has held, "An expert who testifies that a class of persons to which the victim belongs is truthful is essentially telling the jury that they can believe the victim in the instant

(Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Duckett v. State*, 797 S.W.2d 906, 915–17 (Tex. Crim. App. 1990), *disapproved of on other grounds by Cohn v. State*, 849 S.W.2d 817 (Tex. Crim. App. 1993)).

Here, on direct examination, the State asked Jones, "Was [C.G.J.'s] response consistent with a child that had been sexually abused?" Defense counsel objected, stating, "Objection, calls for speculation. And she is not an expert with respect to making that evaluation." The trial court did not rule on this objection but instead told the State, "You will need to qualify her."

The State asked Jones how many forensic interviews she had conducted. Jones responded that she did not know the exact number, but that she had conducted over 1500 in eighteen months at the CAC. She agreed with the prosecutor, based on her training and experience, that there are times when a child won't disclose what happened, when a child does not seem to understand the difference between the truth and a lie, when a child gives answers that are inconsistent with someone who has been sexually abused, and when a child gives answers that are consistent with someone who has been sexually abused. Jones

---

case as well. This is not 'expert' testimony of the kind which will assist the jury under Rule 702." *Id.* at 711. Here, Jones did not testify that she believed that C.G.J. was being truthful or that alleged child victims of sexual assault generally tell the truth. Instead, she testified that C.G.J.'s responses and behavior were consistent with the responses and behavior of children who have been sexually abused. This testimony is permissible expert testimony. *See Dennis v. State*, 178 S.W.3d 172, 182 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

35

also testified, earlier in her testimony, that she had a master's degree in social work, that she had "training in forensic interviewing as well as domestic violence and trauma," and that, before becoming a forensic interviewer, she had worked as an investigator for Child Protective Services. When the State again asked Jones whether C.G.J.'s responses during his forensic interview were consistent with a child who had been sexually abused, defense counsel again objected that Jones was "not qualified to make this assessment," that it is "out of the scope of her training," and that conducting 1500 forensic interviews in eighteen months "doesn't make her an expert with respect to making that particular evaluation." The trial court overruled the objection.

Jones testified that she had a master's degree in social work, that she had worked as an investigator for Child Protective Services before becoming a forensic interviewer, that she had had training as a forensic interviewer, and that she had conducted at least 1500 forensic interviews at the CAC in the eighteen months before trial. The trial court reasonably could have concluded that, as a result of her experience, training, and education, Jones had sufficient background in the field of forensic interviewing such that she could provide expert testimony concerning whether C.G.J.'s responses during his forensic interview were consistent with children who have been sexually abused. *See* TEX. R. EVID. 702; *Bryant,* 340 S.W.3d at 7 (noting that evaluation of expert's qualifications requires trial court to

36

determine whether witness has "a sufficient background in a particular field"). We hold that the trial court did not abuse its discretion in determining that Jones was qualified to present expert testimony.

We overrule appellant's fourth issue.

## Admission of Hearsay Testimony

In his fifth issue, appellant contends that the trial court erroneously allowed A.G. to testify that she became suspicious of appellant after having a conversation with M.N. about text messages from appellant that M.N. had seen on C.G.J.'s cell phone because this testimony constituted inadmissible hearsay. In his sixth issue, appellant contends that the trial court erroneously allowed M.N. to testify concerning the content of the text messages.

### A. *Standard of Review*

We review a trial court's decision to admit evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)). We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

### B. *A.G.'s Testimony Concerning Her Suspicions of Appellant*

Generally, the hearsay rule excludes any out-of-court statements offered by a party at trial to prove the truth of the matter asserted. *See* TEX. R. EVID. 801(d)

37

(defining hearsay); TEX. R. EVID. 802 ("Hearsay is not admissible except as provided by statute or these rules or by other rules prescribed pursuant to statutory authority."). Texas Rule of Evidence 801 defines "matter asserted" as including "any matter explicitly asserted, and any matter implied by a statement, if the probative value of the statement as offered flows from declarant's belief as to the matter." TEX. R. EVID. 801(c). "[A]n out-of-court 'statement' need not be directly quoted in order to run afoul of the hearsay rules." *Head v. State*, 4 S.W.3d 258, 261 (Tex. Crim. App. 1999).

Appellant relies upon the Court of Criminal Appeals' opinion in *Schaffer v. State*, 777 S.W.2d 111 (Tex. Crim. App. 1989), for the proposition that the State's question to A.G. concerning whether she ever became suspicious of appellant's interactions with C.G.J. constituted backdoor hearsay. Specifically, appellant contends that, through this questioning, the State was attempting to place the content of the conversation between A.G. and M.N. before the jury.

In *Schaffer*, the Court of Criminal Appeals held,

> [W]here there is an inescapable conclusion that a piece of evidence is being offered to prove statements made outside the courtroom, a party may not circumvent the hearsay prohibition through artful questioning designed to elicit hearsay indirectly. In short, "statement" as defined in [the predecessor to Rule 801(c)] necessarily includes *proof* of the statement whether the proof is direct or indirect.

777 S.W.2d at 114 (emphasis in original). The court then noted that the State's "sole intent" in pursuing the particular line of questioning of a police officer,

38

which concerned whether another officer confirmed that the defendant was a police informant, was "to convey to the jury that [Officer] Seals had told [Officer] Segovia [the testifying witness] that appellant was not an informant." *Id.* The Court of Criminal Appeals later held, in *Head*, that the issue of "[w]hether the disputed testimony violates the hearsay prohibition necessarily turns on how strongly the content of the out-of-court statement can be inferred from the context." 4 S.W.3d at 261.

Here, A.G. testified that appellant had spent time with C.G.J. and that she approved of this because C.G.J. needed "a good role model in his life." Outside the presence of the jury, the State informed the trial court of its intent to ask A.G. whether her opinion of appellant ever changed and stated that A.G. would testify that she became suspicious of appellant after she had a conversation with M.N., in which M.N. told her of text messages from appellant that she had seen on C.G.J.'s phone. Defense counsel objected to this proposed testimony as constituting third-party hearsay. The trial court informed the State that it could ask A.G. whether her attitude toward appellant changed, what caused that attitude change, that A.G. could respond, "[c]onversations I had with my sister and her husband," and then the State could ask about A.G.'s next interaction with appellant. The court clarified that the State would not be allowed to ask A.G. about what M.N. had said to her, and it overruled appellant's hearsay objection.

The State later asked, "[D]id you ever become suspicious of the defendant's interactions with [C.G.J.]?" A.G. responded, "I really became suspicious after a conversation I had with my sister. . . . I had a conversation with my brother-in-law and my sister; and it made me very, very suspicious." The State then asked A.G. about her next interaction with appellant, during which he was very emotional, apologized to A.G., and told her "that he loved my son and that he just wanted to see him." At the time A.G. testified, M.N. had not yet testified.

A.G. thus testified only that she had a conversation with her sister and brother-in-law that made her suspicious of appellant. She did not reference the fact that M.N. told her about text messages that she had seen from appellant to C.G.J. Furthermore, A.G. testified before M.N. testified about the content of the text messages and about her own suspicions of appellant, and A.G. also testified before both C.G.J. and Stephanie Jones testified concerning appellant's sexual abuse of C.G.J.

The trial court therefore could have reasonably concluded that A.G.'s testimony "did not lead to any inescapable conclusions as to the substance of the out-of-court statements." *See id.* at 262. A.G.'s testimony did not reveal the substance of what her sister had told her, and no other evidence introduced as of that point in the trial indicated the substance of A.G.'s conversation with M.N.. *See id.* At most, the jury may have been able to infer that M.N. told A.G.

40

something that made her think that appellant had an inappropriate relationship with C.G.J. *See id.* ("The trial court could have reasonably determined that this sort of inferential leap did not provide the requisite degree of certainty 'that the State's *sole intent* in pursuing this line of questioning was to convey to the jury' the contents of the out-of-court statements.") (emphasis in original) (quoting *Schaffer*, 777 S.W.2d at 114); *see also Gurka v. State*, 82 S.W.3d 416, 421 (Tex. App.—Austin 2002, pet. ref'd) ("[The trial court's] discretion is not to be disturbed unless it is evident from the record that the sole intent in introducing the evidence was to prove the contents of an out-of-court statement.").

The trial court could have reasonably concluded, based on the facts of this case, that A.G.'s testimony "did not leave the jury with the inescapable conclusion" that M.N. was actually the one testifying through A.G. *See McCreary v. State*, 194 S.W.3d 517, 521–22 (Tex. App.—Houston [1st Dist.] 2006, no pet.) ("The major problem in *Schaffer* and *Burks [v. State*, 876 S.W.2d 877 (Tex. Crim. App. 1994)] was that the prosecutor's questioning left the jury with the 'inescapable conclusion' that . . . someone other than the declarant was testifying through the witness on the stand."). We hold that the trial court did not abuse its discretion in allowing A.G.'s testimony.

## C. M.N.'s Testimony Concerning Content of Text Messages

The State sought to introduce the content of text messages that M.N. saw on a phone given to C.G.J. by appellant.[10] Defense counsel objected to this testimony on the basis that the text messages were not sufficiently authenticated and that they constituted inadmissible hearsay. The trial court found "that there is sufficient authentication" and that the text messages constituted an admission by a party opponent and therefore did not fall within the definition of hearsay.

Rule 801(e) provides that an admission by a party opponent, that is, a statement that is offered against a party and is "the party's own statement," does not constitute hearsay. *See* TEX. R. EVID. 801(e)(2)(A). Authentication is a condition precedent to admissibility and is satisfied "by evidence sufficient to support a finding that the matter in question is what its proponent claims." TEX. R. EVID. 901(a); *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012). In determining authenticity issues, "The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic." *Tienda*, 358 S.W.3d at 638. One of the ways in which

---

[10] After M.N. saw the text messages and confronted appellant about them, C.G.J. deleted the messages at appellant's direction. Thus, the text messages themselves were not introduced into evidence.

evidence may be authenticated is by testimony from a witness with knowledge that "a matter is what it is claimed to be." TEX. R. EVID. 901(b)(1).

Outside the presence of the jury, M.N. testified that, while he lived with her, C.G.J. had a cell phone that he received as a gift from appellant. She testified that C.G.J. referred to appellant as "Godfather," that C.G.J.'s cell phone had the name "Godfather" associated with appellant, and that the phone would state "Godfather" when C.G.J. received text messages from appellant. M.N. stated that C.G.J. did not refer to anyone else as "Godfather." She also testified that she saw several text messages on C.G.J.'s phone from "Godfather" that said "Why haven't you called me?," "I miss you," "I can't live without you," and "Why are you doing this to me?" M.N. testified that she then confronted appellant about the text messages and that he did not deny sending them. Later that night, she asked C.G.J. for his phone, but he had already deleted the text messages at appellant's direction.

We conclude that M.N.'s testimony is sufficient to support a reasonable jury's determination that the text messages are what the State claims them to be, that is, text messages from appellant to C.G.J. *See* TEX. R. EVID. 901(a); *Tienda*, 358 S.W.3d at 638. We hold that the trial court did not abuse its discretion in holding that the text messages were authentic and in allowing M.N. to testify concerning the content of the messages. *See Tienda*, 358 S.W.3d at 638 ("If the trial court's ruling that a jury could reasonably find proffered evidence authentic is

43

at least 'within the zone of reasonable disagreement,' a reviewing court should not interfere.") (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991)).

Because the text messages at issue here and offered against appellant are his own statements, these messages constitute admissions by a party opponent and therefore do not fall within the definition of hearsay statements. TEX. R. EVID. 801(e)(2)(A); *see also Hughes v. State*, 4 S.W.3d 1, 6 (Tex. Crim. App. 1999) ("A statement qualifies as an admission by party opponent if it is offered against a party and it is the party's own statement."). We therefore hold that the trial court did not abuse its discretion in admitting into evidence M.N.'s testimony concerning the content of the text messages.

We overrule appellant's fifth and sixth issues.

### Admission of Extraneous Offense Evidence

In his eighth issue, appellant contends that the trial court erred in overruling his motion to testify free of impeachment by prior criminal offenses because the probative value of the convictions did not outweigh their prejudicial effect. In his ninth issue, appellant contends that the trial court erred in allowing the State to impeach him with a prior conviction that was more than ten years old. In his tenth and eleventh issues, appellant contends the trial court erred in allowing the State to

impeach him with two misdemeanor convictions for offenses that did not constitute crimes involving moral turpitude. We consider these issues together.

## A. *Standard of Review*

The trial court has "wide discretion" to decide whether to admit evidence of a defendant's prior convictions. *Theus v. State*, 845 S.W.2d 874, 881 (Tex. Crim. App. 1992). We therefore reverse this decision on appeal only upon a showing of a clear abuse of discretion. *Id.*; *Davis v. State*, 259 S.W.3d 778, 780 (Tex. App.— Houston [1st Dist.] 2007, pet. ref'd). A trial court abuses its wide discretion when its decision to admit a prior conviction lies outside the zone of reasonable disagreement. *Davis*, 259 S.W.3d at 780 (quoting *Theus*, 845 S.W.2d at 881). We uphold a trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006); *see also De La Paz*, 279 S.W.3d at 344 ("[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling.").

## B. *Admissibility of Prior Convictions*

Rule of Evidence 609 provides that evidence of a witness's prior conviction shall be admitted as impeachment evidence if the crime was a felony or a misdemeanor involving moral turpitude, and the court determines that the

probative value of admitting the prior conviction outweighs its prejudicial effect. TEX. R. EVID. 609(a); *Davis*, 259 S.W.3d at 780–81. Such evidence is not admissible if more than ten years have elapsed since the date of conviction or the release of the witness from confinement, whichever is later, unless the trial court determines, in the interests of justice, that the probative value of the prior conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect. TEX. R. EVID. 609(b); *Davis*, 259 S.W.3d at 781. However, "subsequent convictions for felonies or misdemeanors involving moral turpitude may remove any taint of remoteness from prior convictions." *Davis*, 259 S.W.3d at 781; *Rodriguez v. State*, 129 S.W.3d 551, 559 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd) ("A misdemeanor theft conviction is a crime involving moral turpitude, and, therefore, it can be 'tacked onto' remote convictions and cause them to be treated as not remote under Rule 609(a)."); *Hernandez v. State*, 976 S.W.2d 753, 755 (Tex. App.—Houston [1st Dist.] 1998, pet. ref'd) ("[T]he 'tacking' of the intervening convictions causes a conviction older than 10 years to be treated as not remote.").

In *Theus*, the Court of Criminal Appeals set out a non-exclusive list of factors that courts should consider when determining whether the probative value of a prior conviction outweighs its prejudicial effect. 845 S.W.2d at 880; *Davis*, 259 S.W.3d at 782. These factors include: (1) the impeachment value of the prior

crime; (2) the temporal proximity of the past crime relative to the charged offense and the witness's subsequent criminal history; (3) the similarity between the past crime and the charged offense; (4) the importance of the defendant's testimony; and (5) the importance of the credibility issue. *Theus*, 845 S.W.2d at 880; *Davis*, 259 S.W.3d at 782. The party seeking to introduce evidence of prior convictions pursuant to Rule 609 bears the burden of demonstrating that the probative value of the prior conviction outweighs its prejudicial effect. *Theus*, 845 S.W.2d at 880; *Davis*, 259 S.W.3d at 782.

### 1. Appellant's 1992 Aggravated Assault Conviction

In his ninth issue, appellant contends that the trial court erred in allowing the State to impeach him with a 1992 conviction for aggravated assault because the conviction was more than ten years old at the time of trial. Appellant argued that the trial court impermissibly used a 2006 misdemeanor conviction that did not involve moral turpitude to "tack onto" the 1992 conviction and bring it within the ten-year period of Rule 609(a).

Under the "tacking" doctrine, a subsequent conviction for a felony or a misdemeanor involving moral turpitude "may remove any taint of remoteness from prior convictions." *Davis*, 259 S.W.3d at 781; *see also Lucas v. State*, 791 S.W.2d 35, 51 (Tex. Crim. App. 1989) ("Evidence of the lack of reformation *or* subsequent felony and certain misdemeanor convictions may then cause the prior conviction to

fall outside the general rule and not be subject to the objection of remoteness.") (emphasis in original). Courts then analyze the prior conviction under Rule 609(a), which requires only that the probative value of the conviction outweigh its prejudicial effect, as opposed to Rule 609(b), which requires the probative value of the prior conviction to *substantially* outweigh its prejudicial effect. *See* TEX. R. EVID. 609(a)–(b).

Appellant argues that the trial court could not permissibly use his 2006 misdemeanor assault conviction to "tack onto" his 1992 aggravated assault conviction and bring that conviction within Rule 609(a)'s ten-year period. In making his argument that the 1992 conviction must be treated as remote and thus evaluated under Rule 609(b)'s "substantially outweighs" standard, however, appellant ignores his 2009 felony conviction for possession of a controlled substance. Even if the trial court erred in using the 2006 misdemeanor assault conviction for tacking purposes, the 2009 felony conviction can be "tacked onto" the otherwise-remote 1992 conviction and can cause the 1992 conviction to be treated as not remote and analyzed under Rule 609(a). *See Davis*, 259 S.W.3d at 781; *Rodriguez*, 129 S.W.3d at 559; *see also De La Paz*, 279 S.W.3d at 344 ("[I]f the trial court's evidentiary ruling is correct on any theory of law applicable to that ruling, it will not be disturbed even if the trial judge gave the wrong reason for his right ruling."). We therefore use Rule 609(a)'s standard of whether the probative

value of the 1992 conviction outweighed its prejudicial effect to determine whether the trial court abused its discretion in admitting evidence of this prior conviction. *See Hernandez*, 976 S.W.2d at 755 ("[T]he 609(a) standard is appropriate because the 'tacking' of the intervening convictions causes a conviction older than 10 years to be treated as not remote.").

With regard to the first *Theus* factor, the impeachment value of the prior crime, we note that the impeachment value of prior offenses involving deception or moral turpitude is greater than for offenses involving violence, which are likely to have more a greater prejudicial effect. *Theus*, 845 S.W.2d at 881; *Davis*, 259 S.W.3d at 782. Appellant's 1992 conviction for aggravated assault involves violence, not deception, and, thus, this factor weighs against admission of the prior offense.

The second factor, temporal proximity and subsequent criminal history, "favor[s] admission if the past crime is recent and if the witness has demonstrated a propensity for running afoul of the law." *Theus*, 845 S.W.2d at 881; *Davis*, 259 S.W.3d at 782. Here, the aggravated assault conviction occurred in 1992, more than ten years before the charged offense and twenty years before trial, so this past crime is not recent; however, appellant had three intervening convictions in between 1992 and the time of trial in 2013, thus demonstrating a "propensity for

running afoul of the law." *See Theus*, 845 S.W.2d at 881. This factor therefore weighs in favor of admission.

Regarding the third *Theus* factor, similarity between the past offense and the current charged offense "militates against admissibility, whereas dissimilarity between the past offense and the current offense favors admissibility." *Davis*, 259 S.W.3d at 783. "The rationale behind this is that the admission for impeachment purposes of a crime similar to the crime charged presents a situation where the jury would convict on the perception of a past pattern of conduct, instead of on the facts of the charged offense." *Theus*, 845 S.W.2d at 881. Here, the 1992 offense of aggravated assault is not similar to the charged offenses of aggravated sexual assault of a child. Thus, this factor also weighs in favor of admission of the 1992 conviction.

The fourth and fifth *Theus* factors are related "because both depend on the nature of a defendant's defense and the means available to him of proving that defense." *Id.* In situations in which a defendant presents an alibi defense and can call other witnesses, his credibility is not likely to be a critical issue. *Id.* When, however, the case involves the testimony of only the defendant and the State's witnesses, the importance of the defendant's credibility and his testimony escalates, and as the importance of his credibility increases, so does the need to allow the State an opportunity to impeach the defendant's credibility. *Id.*; *Davis*,

50

259 S.W.3d at 784. Here, appellant called a few other witnesses in his defense, primarily to testify that appellant did not have an inappropriate relationship with them when they were young boys and that they never saw any indication that appellant and C.G.J. had an inappropriate relationship. Appellant and C.G.J. were the only direct eyewitnesses to the alleged acts of sexual abuse, and, therefore, both appellant's credibility and C.G.J.'s credibility were critical. Because appellant's credibility was of great importance in this case, the State had a corresponding need to be able to impeach his credibility. *See Theus*, 845 S.W.2d at 881; *Davis*, 259 S.W.3d at 784 ("[T]he complainant and appellant provided the only direct eyewitness testimony concerning the assault. Moreover, the credibility of the complainant and appellant were critical issues because the complainant and appellant each testified that the other was the aggressor in the incident."). We therefore conclude that the fourth and fifth *Theus* factors favor admission of the past conviction.

We conclude that all but one of the *Theus* factors favors admission of appellant's 1992 conviction for aggravated assault. We therefore hold that the probative value of this conviction outweighs its prejudicial effect and that the trial court did not abuse its discretion in admitting evidence of this conviction. *See Davis*, 259 S.W.3d at 784.

51

## 2. *Appellant's Two Misdemeanor Convictions*

In his tenth and eleventh issues, appellant contends that the trial court erred in allowing the State to impeach him with a 2006 misdemeanor conviction for assault on a family member and a 2004 misdemeanor conviction for harboring a runaway because neither offense involved moral turpitude.

Courts have defined "moral turpitude" as encompassing crimes that involve:

(1) "dishonesty, fraud, deceit, misrepresentation, or deliberate violence";

(2) matters of "personal morality";

(3) conduct committed "knowingly contrary to justice, honesty, principle, or good morals";

(4) "baseness, vileness, or depravity";

(5) conduct "immoral in itself, regardless of whether it is punishable by law," in that the "doing of the act itself, and not its prohibition by statute, fixes the moral turpitude"; or

(6) "immoral conduct" that is "willful, flagrant, or shameless, and which shows a moral indifference to the opinion of the good and respectable members of the community."

*Escobedo v. State*, 202 S.W.3d 844, 848 (Tex. App.—Waco 2006, pet. ref'd) (citing *In re G.M.P.*, 909 S.W.2d 198, 208 (Tex. App.—Houston [14th Dist.] 1995, no writ), and *Turton v. State Bar of Tex.*, 775 S.W.2d 712, 716 (Tex. App.—San Antonio 1989, writ denied)); *see also Hardeman v. State*, 868 S.W.2d 404, 405 (Tex. App.—Austin 1993, pet. dism'd) ("'Moral turpitude' has been defined as

'[t]he quality of a crime involving grave infringement of the moral sentiment of the community as distinguished from statutory mala prohibita.'").

Courts have held that, generally, misdemeanor assaultive offenses that do not involve female victims are not crimes of moral turpitude and that misdemeanor assaultive offenses that do involve female victims are crimes of moral turpitude. *See Hardeman*, 868 S.W.2d at 405–07 (discussing progression of case law). In holding that an assault by a man against a woman is a crime involving moral turpitude, the Austin Court of Appeals stated that this offense is "generally regarded by the members of our society as more morally culpable than some other types of assaultive crimes." *Id.* at 407. Here, appellant had a 2006 misdemeanor conviction for assault on a family member. The record indicates that the complainant for that offense was a minor child. We conclude that, as with assaults committed against women, an assault committed against a child is "generally regarded by the members of our society as more morally culpable" and that this offense involves conduct that is "knowingly contrary" to "good morals." *See Hardeman*, 868 S.W.2d at 407; *see also Escobedo*, 202 S.W.3d at 848 (defining "moral turpitude" as involving conduct committed "knowingly contrary to . . . good morals"). We conclude that, under the facts of this case, appellant's 2006 conviction for misdemeanor assault on a family member constitutes a crime

53

involving moral turpitude and thus may be used for impeachment if its probative value outweighs its prejudicial effect.

The 2006 conviction involves violence, rather than deception, and thus this *Theus* factor weighs against admission of the conviction. *See Theus*, 845 S.W.2d at 881; *Davis*, 259 S.W.3d at 782. The 2006 conviction occurred one year after the charged offense and thus, along with appellant's 2009 felony conviction, demonstrates that he has a propensity for running afoul of the law. *See Theus*, 845 S.W.2d at 880 (stating that second factor to consider is "temporal proximity of the past crime relative to the charged offense"); *Davis*, 259 S.W.3d at 782. This factor therefore weighs in favor of admission. The 2006 offense for misdemeanor assault on a family member is not similar to the charged offense of aggravated sexual assault of a child, and thus this *Theus* factor also weighs in favor of admission. *See Theus*, 845 S.W.2d at 881; *Davis*, 259 S.W.3d at 783. We have already held that the fourth and fifth *Theus* factors weigh in favor of admission. Thus, as with appellant's 1992 aggravated assault conviction, four of the five *Theus* factors weigh in favor of admission. We therefore conclude that the trial court did not abuse its discretion in determining that the probative value of appellant's 2006 conviction for assault on a family member outweighed its prejudicial effect. *See Davis*, 259 S.W.3d at 784.

With regard to appellant's 2004 misdemeanor conviction for harboring a runaway child, we assume, without deciding, that this offense did not constitute a crime involving moral turpitude and thus the trial court erred in allowing the State to impeach appellant with this conviction. We therefore turn to whether this decision constituted reversible error.

Error in the admission of evidence is non-constitutional error subject to a harm analysis under Texas Rule of Appellate Procedure 44.2(b). TEX. R. APP. P. 44.2(b); *Jabari v. State*, 273 S.W.3d 745, 754 (Tex. App.—Houston [1st Dist.] 2008, no pet.). We disregard any non-constitutional error that does not affect a defendant's substantial rights by having a "substantial and injurious effect or influence in determining the jury's verdict." *Jabari*, 273 S.W.3d at 754 (citing *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000)); *see* TEX. R. APP. P. 44.2(b). We should not reverse a conviction for non-constitutional error if, after examining the record as whole, we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Jabari*, 273 S.W.3d at 754 (citing *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998)); *Hankins v. State*, 180 S.W.3d 177, 182 (Tex. App.—Austin 2005, pet. ref'd) ("[W]e consider the entire record, including testimony, physical evidence, the nature of the evidence supporting the verdict, the character of the alleged error, the State's theory, the defensive theory, and closing arguments.").

Here, C.G.J. testified that appellant sexually assaulted him on numerous occasions. Stephanie Jones testified that C.G.J. disclosed several acts of sexual abuse during his forensic interview. Appellant, on the other hand, denied the allegations and testified that he did not have any sexual contact with C.G.J. Appellant called three witnesses who had also lived at the Embers Apartments and who testified that appellant did not have an inappropriate relationship with them and that they never noticed anything inappropriate about appellant's relationship with C.G.J.

At the time the State asked appellant about his 2004 conviction for harboring a runaway child, defense counsel asked for a limiting instruction. The trial court instructed the jury: "[T]he information that you just heard about the defendant's convictions may only be considered in determining his credibility as a witness and for no other purpose." The trial court also included the following instruction in the written charge:

> You are instructed that certain evidence was admitted before you in regard to the defendant's having been charged and convicted of an offense or offenses other than the one for which he is now on trial. Such evidence cannot be considered by you against the defendant as any evidence of guilt in this case. Said evidence was admitted before you for the purpose of aiding you, if it does aid you, in passing upon the weight you will give his testimony, and you will not consider the same for any other purpose.

The State mentioned the 2004 harboring a runaway child conviction on three occasions: (1) the prosecutor asked appellant about his four prior convictions;

(2) the prosecutor asked whether I.G., who had testified in appellant's favor, had been the runaway child that appellant had harbored; and (3) the prosecutor mentioned this offense when summarizing I.G.'s testimony supporting appellant during closing argument. Aside from pointing out that I.G. was the child involved in the harboring-a-runaway offense, the State did not elicit details about that offense or otherwise emphasize it.

We conclude that, when considering the testimony, the nature of any error, the trial court's limiting instructions, and the lack of emphasis on the 2004 conviction during the State's questioning of appellant and closing argument, we have "fair assurance that the error," if any, "did not influence the jury, or had but a slight effect." *Jabari*, 273 S.W.3d at 754. We hold that the trial court's decision to allow the State to impeach appellant with the 2004 conviction for harboring a runaway child, even if improper, did not constitute reversible error.

We overrule appellant's eighth, ninth, tenth, and eleventh issues.[11]

---

[11] We note that, aside from arguing in his eighth issue that the trial court erroneously allowed the State to cross examine him about his prior convictions when the record did not establish that the probative value of his convictions outweighed their prejudicial effect, appellant does not raise any specific argument on appeal for why his 2009 felony conviction for possession of a controlled substance was inadmissible. He makes no effort to analyze the admissibility of this conviction under *Theus*. As a drug conviction that did not involve deception, moral turpitude, or violence, this conviction had a lower impeachment value, which weighs against admission. *See Denman v. State*, 193 S.W.3d 129, 136 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). This conviction occurred four years after the charged offense and is not similar to the charged offense, and thus the second and third *Theus* factors weigh in favor of admission. *See Theus v. State*, 845 S.W.2d 874,

failure to produce evidence in his favor on his defense and did not shift the burden of proof to appellant").

Here, during closing argument, the prosecutor summarized C.G.J.'s outcry to his mother, the police, and Jones. The prosecutor then stated, "Now, has Defense counsel offered any evidence—anything to suggest why a 16-year-old boy would make this up?" Appellant then objected "to any reference as to why. We have no burden of proof." The trial court overruled appellant's objection.

The prosecutor's statement was not such that the jury "would necessarily and naturally take it as a comment on the defendant's failure to testify."[12] *See Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001); *Baines*, 401 S.W.3d at 108. Rather, it referred to the state of the evidence, reflecting that appellant did not, for example, offer any witnesses to testify that C.G.J. had motivation to get appellant in trouble. Thus, the language the prosecutor used "can be reasonably construed as referring to a defendant's failure to produce testimony or evidence from sources other than himself." *Baines*, 401 S.W.3d at 108. The prosecutor's statement here was a permissible remark on appellant's failure to produce evidence in his favor, and this statement did not shift the burden of proof to appellant. *See id.* at 109; *Caron*, 162 S.W.3d at 618. We hold that the trial court did not err in overruling appellant's objection to improper jury argument.

---

[12] We also note that, in this case, appellant testified on his own behalf.

We overrule appellant's twelfth issue.

## Decision to Cumulate Sentences

Finally, in his thirteenth issue, appellant contends that the trial court erred when it ordered appellant's sentences in cause numbers 1308988 and 1328806 to run concurrently and the sentence in cause number 1328807 to be cumulated and to begin after appellant finished serving his sentences for cause numbers 1308988 and 1328806. Appellant contends that the trial court's decision to cumulate the sentences violated his right to a jury trial.

Penal Code section 3.03(a) provides, "When the accused is found guilty of more than one offense arising out of the same criminal episode prosecuted in a single criminal action, a sentence for each offense for which he has been found guilty shall be pronounced. Except as provided by Subsection (b), the sentences shall run concurrently." TEX. PENAL CODE ANN. § 3.03(a) (Vernon Supp. 2014). Subsection (b) provides that when a defendant is found guilty of more than one offense arising out of the same criminal episode, "the sentences may run concurrently or consecutively if each sentence is for a conviction of" an offense under Penal Code section 22.021 "committed against a victim younger than 17 years of age at the time of the commission of the offense regardless of whether the accused is convicted of violations of the same section more than once or is convicted of violations of more than one section." *Id.* § 3.03(b)(2)(A); *see also*

61

TEX. CODE CRIM. PROC. ANN. art. 42.08(a) (Vernon Supp. 2014) (providing that trial court has discretion to order that sentences run concurrently or be cumulated).

The Texas Legislature has "assigned the task of cumulating sentences exclusively to the trial judge." *Beedy v. State*, 250 S.W.3d 107, 110 (Tex. Crim. App. 2008); *Barrow v. State*, 207 S.W.3d 377, 380 (Tex. Crim. App. 2006). In some cases, the trial court is statutorily required to cumulate individual punishments, and in other cases, the trial court's decision to cumulate sentences is discretionary. *Beedy*, 250 S.W.3d at 110. A trial court's decision to cumulate is "a normative, discretionary function that does not turn on discrete findings of fact." *Id.*; *Barrow*, 207 S.W.3d at 380. Thus, when a trial court lawfully exercises the option to cumulate sentences, "that decision is unassailable on appeal." *Beedy*, 250 S.W.3d at 110; *Barrow*, 207 S.W.3d at 381 (comparing trial court's option to cumulate sentences to jury's "essentially unfettered" discretion in imposing punishment within relevant statutory punishment range). "The Legislature has charged the trial court with the determination of whether to cumulate, and the trial court is free to make this determination so long as the individual sentences are not elevated beyond their respective statutory maximums." *Barrow*, 207 S.W.3d at 382.

In *Barrow*, the Court of Criminal Appeals also addressed whether a trial court's decision to cumulate sentences pursuant to section 3.03 violated the United

States Supreme Court's decision in *Apprendi v. New Jersey*, the defendant's Sixth Amendment right to a jury trial, and due process. The Court of Criminal Appeals held that, under *Apprendi*, when a defendant elects to have the jury assess punishment, "any discrete finding of fact that has the effect of increasing the maximum punishment that can be assessed must be made by the jury, even if that fact-finding occurs as part of the punishment determination." *Id.* at 379; *see also Apprendi*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362–63 (2000) ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). The court noted that *Apprendi* prohibits the trial court from "unilaterally increasing *individual* sentences on the basis of facts that were not resolved by the jury." *Barrow*, 207 S.W.3d at 379 (emphasis in original). The court stated that *Apprendi* does not "speak to a trial court's authority to cumulate sentences when that authority is provided by statute and is not based upon discrete fact-finding, but is wholly discretionary." *Id.*; *Alameda v. State*, 235 S.W.3d 218, 224 (Tex. Crim. App. 2007) ("[T]he *Apprendi* line of cases does not apply to a trial court's decision to cumulate jury-imposed sentences.").

A jury convicted Barrow of two counts of sexual assault and assessed punishment within the statutory punishment range for each conviction. *Barrow*, 207 S.W.3d at 379. The Court of Criminal Appeals reasoned that when the trial

court decided to cumulate the sentences, the court "in no way altered either of the individual sentences." *Id.* (emphasis in original). The court's decision to cumulate the sentences "did not raise the 'statutory maximum' punishment for either offense." *Id.* The court further concluded that because cumulating sentences does not "implicate discrete fact finding that affects the 'statutory maximum' punishment," the decision to cumulate also "does not activate the Sixth Amendment right to a jury determination." *Id.* at 380. The court also analogized the decision to cumulate to the jury's—or the trial court's, in a bench trial—broad discretion to impose a punishment within the statutory punishment range and stated that the decision to cumulate, although statutorily placed with the trial court instead of the jury, is of an "essentially normative, non-fact-bound character." *Id.* at 381. The court held that it does "not believe that the legislatively endowed, normative decision whether to cumulate sentences exceeds that level of discretion that the Supreme Court has always recognized as consistent with due process." *Id.* at 382.

Here, the jury found appellant guilty of three counts of aggravated sexual assault of a child, and it assessed punishment at sixty-eight years' confinement for each count, an amount within the permissible statutory punishment range. *See* TEX. PENAL CODE ANN. § 12.32(a) (Vernon 2011) (providing that punishment range for first-degree felony is five to ninety-nine years' confinement or confinement for life); *id.* § 22.021(e) (providing that aggravated sexual assault of

64

child is first-degree felony). Penal Code section 3.03(b)(2)(A) provides the statutory authority for the trial court, within its discretion, to cumulate the sentences assessed. *See id.* § 3.03(b)(2)(A). The trial court, in deciding to cumulate the sentence for cause number 1328807, acted within its statutory discretion. As this decision did not increase any of the three individual sentences imposed, the trial court did not violate *Apprendi*, the Sixth Amendment right to a jury trial, or due process. *See Barrow*, 207 S.W.3d at 379–82. We therefore hold that the trial court did not abuse its discretion when it ordered the sentences in cause numbers 1308988 and 1328806 to run concurrently and the sentence in cause number 1328807 to be cumulated and to begin after appellant served the sentences in cause numbers 1308988 and 1328806.

We overrule appellant's thirteenth issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Higley, and Brown.

Publish. TEX. R. APP. P. 47.2(b).

Abel Acosta
Court of Criminal
Po. Box 12308
Capital Station
Austin, Tx 78711

Javier Campos #1854678
Geo-Fac 3514/Stiles Unit
Beaumont, Tx 77705

FOREVER USA 2014
FOREVER USA 2014
FOREVER USA 2014
FOREVER USA 2014
FOREVER USA 2014
FOREVER USA 2014
FOREVER USA 2014
FOREVER USA 2014

PRIORITY® MAIL
UNITED STATES POSTAL SERVICE

Visit us at usps.com

Label 107, January 2008

Expected Delivery Day: 04/20/15

USPS TRACKING NUMBER

9505 5110 4977 5106 3611 97