

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-14-00166-CR

_____

RODERICK KING, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 43416-A

Before Morriss, C.J., Moseley and Burgess, JJ.
Memorandum Opinion by Justice Burgess

# MEMORANDUM OPINION

Roderick King was indicted on a charge of assault upon a family member, which was enhanced to a third degree felony due to a prior conviction for assault upon a family member. After a jury trial, King was convicted as charged. On his plea of "true" to the allegations of the State's enhancement paragraphs, King was sentenced to seven years' confinement.

On appeal, King argues (1) that the evidence is insufficient to support the verdict and (2) that the trial court erred by overruling his objection to the State's improper jury argument.

We affirm the trial court's judgment because legally sufficient evidence supports the verdict and because the trial court did not abuse its discretion in overruling King's objection to the State's jury argument.

## I.    Factual Background

Joyce Dawkins testified that at the time of the incident, she lived with her boyfriend, Roderick King, and her brother, George Sanders. In the early morning hours of November 15, 2013, Dawkins came home from work and went to bed early because she had allergies and a cold and "had been feeling bad for at least a week." While she was in bed, King started cursing at her and calling her names. King eventually turned on a fan, which worsened Dawkins' condition. In response, she got out of bed, went to the dining room, and started watching television. King followed her, tried to force her to go back to bed, and began hitting "toward [her] head." She put her hands up to defend herself and was trying to get away. While Dawkins could not estimate the length of the altercation with any precision, she did testify that it lasted longer than one minute and perhaps as long as ten or fifteen minutes. At some point, Sanders heard her say, "Don't hit

2

me anymore," and he entered the room and the fight stopped. When Dawkins called 9-1-1, King left the residence before the police arrived.

Sanders testified that when he got home that night, he spoke briefly with Dawkins and went to his bedroom for a few minutes, but that he went back into the dining room when he heard Dawkins scream. He testified that he had been home for ten or fifteen minutes when he heard Dawkins yell at King. He did not see the altercation itself, but noted that Dawkins was uninjured when he initially arrived home and that the knot on Dawkins' head appeared after the altercation.

Dawkins testified that there was a "huge knot" on her head and a knot on her arm as well and that while the injuries hurt, she did not seek medical treatment for them. On cross-examination, Dawkins admitted that she did not believe King was hitting her hard enough to put a knot on her head; she stated that she was unsure exactly how the knot got there.

In response to the 9-1-1 call, Officer Suzzanne Hardee of the Longview Police Department was dispatched to the residence at about 2:00 a.m. Upon her arrival, Dawkins told Hardee that King, whom Dawkins referred to as her common-law husband, had assaulted her. Hardee recorded the knot on Dawkins' forehead and the swelling on her forearm on video. Dawkins told her that the injury to her head hurt, but "didn't hurt too bad." Hardee testified that the injury to Dawkins' forearm "could indicate a defensive wound . . . [from] protecting [herself]." Dawkins refused medical treatment and did not request an emergency protective order.

King was later arrested and charged with assault upon a family member. A Gregg County jury convicted King, and he was sentenced, after enhancement for a previous family violence assault conviction, to seven years' confinement.

3

About one year after the incident, Dawkins met with King's attorney and signed an affidavit of nonprosecution. When questioned about the affidavit, Dawkins admitted that it does not deny that the assault occurred but merely states her desire that King not be prosecuted for it. Dawkins testified that she never expected this matter to go as far as it did.

## II.     Is the Evidence Sufficient to Support the Verdict?

In his first point of error, King contends that the evidence supporting his conviction is legally insufficient.

In evaluating legal sufficiency, we review all of the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found that King committed the offense of assault, family violence, beyond a reasonable doubt. *See Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). Our rigorous legal sufficiency review focuses on the quality of the evidence presented. *Brooks*, 323 S.W.3d at 917–18 (Cochran, J., concurring). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not

4

unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

The State charged King with injuring Dawkins by striking her with his hand. To prove that a defendant unlawfully assaulted another person, the State must prove, beyond a reasonable doubt, that the defendant intentionally, knowingly, or recklessly caused bodily injury to another. *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (West Supp. 2014). Although usually a class A misdemeanor, the offense is elevated to a third degree felony if it is committed against a person whose relationship with the defendant is described in Sections 71.0021(b) (dating), 71.003 (family), or 71.005 (household) of the Texas Family Code and if the defendant has been previously convicted of an assault involving family violence. *See* TEX. PENAL CODE ANN. § 22.01(b)(2)(A) (West Supp. 2014); TEX. FAM. CODE ANN. §§ 71.0021(b), 71.003, 71.005 (West 2014).

Here, King only challenges the method used to inflict Dawkins' injuries. Specifically, he argues that there is legally insufficient evidence to prove that he caused Dawkins' injuries "with his hand" as is alleged in the indictment. While Dawkins testified on cross-examination that she did not believe King was hitting her hard enough to put a knot on her head and that she was unsure of exactly how the knot got there, the following colloquy from the State's redirect examination of Dawkins suggests otherwise:

> *Q.* The injuries that you sustained, did you have those injuries before the defendant hit you?
>
> *A.* No.
>
> *Q.* Did you have those injuries as a result of the altercation?
>
> *A.* As a result.

5

*Q.*     And did the defendant hit you with his hands?

*A.*     Yes.[1]

Even though the evidence in this case contained some conflicting testimony, the jury alone resolves conflicts in the testimony and determines the credibility of witnesses as well as the weight to be given to their testimony. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). When the record supports conflicting inferences, the jury is presumed to have resolved the conflicts in favor of the verdict. *Jackson*, 443 U.S. at 319. Therefore, viewed in the light most favorable to the verdict, we conclude that a rational jury could have found the essential elements of the offense beyond a reasonable doubt. Accordingly, we overrule this point of error.

**III.     Did the Trial Court Err in Overruling King's Objection to the State's Improper Jury Argument?**

In his second point of error, King contends that the State made an improper argument to the jury and that the trial court erred by overruling his objection to that improper argument.

Permissible jury argument falls into one of four categories: "(1) summation of the evidence, (2) reasonable deduction from the evidence, (3) answer to the argument of opposing counsel, and (4) plea for law enforcement." *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008). We examine alleged improper argument in light of the facts adduced at trial and in the context of the entire argument. *McGee v. State*, 774 S.W.2d 229, 239 (Tex. Crim. App. 1989).

---

[1]Because King does not challenge the remaining elements of the offense, we need not address them.

6

A trial court's ruling on an objection to improper jury argument is reviewed for abuse of discretion. *See Garcia v. State*, 126 S.W.3d 921, 924 (Tex. Crim. App. 2004).

During voir dire, King skillfully used a series of hypotheticals involving a person suspected of driving while intoxicated (DWI) to question the jury panel regarding the different levels of proof required to establish reasonable suspicion to stop, probable cause to arrest, and guilt beyond a reasonable doubt. King's initial hypothetical asked the jury panel to assume that he called the police and told them that he was just in a restaurant, and that he saw a man drink a sip of beer, stand up, stumble into a table, walk out the door, and drive away in a car. King then asked the panel whether that evidence, alone, was enough to constitute reasonable suspicion to stop the car. In turn, he asked whether the evidence was sufficient to constitute probable cause to arrest a person for DWI. He continued questioning the panel by adding to or altering the facts of his initial hypothetical. The following is an excerpt of King's interaction with the panel using this DWI hypothetical:

> [KING]: Okay. . . . do you think that that would be enough to place somebody under arrest for DWI, that same scenario?
>
> VENIREPERSON BRUMBAUGH: Certainly not. You have to have more proof.
>
> [KING]: Okay. You would need more proof. . . . I agree with you, I think that's right.
> Let's say the officer pulls the person out of the car and does some field sobriety tests and believe[s] that they didn't pass those field sobriety tests, but a person decides, well, I'm not going to take a breath test, so we don't have a measurement of what the alcohol level is. What about now? Do you think that that's enough, if they failed the field sobriety tests but no breath test, that that would be enough to arrest them?

7

VENIREPERSON BRUMBAUGH: I would think that would be probable cause.

[KING]: Okay. Now, and that's -- I would tend to agree with you, and I think most courts would tend to agree that that would be probable cause to arrest somebody. Now, just because they failed those field sobriety tests, does that mean they are guilty of DWI?

VENIREPERSON BRUMBAUGH: No.

[KING]: Okay. Does anybody disagree with that? All right. What if that person failed those field sobriety tests because they had recently had surgery on their ankle and can't walk a straight line or can't stand on one leg and hold their leg up; could that be a reason why they failed those tests?

VENIREPERSON BRUMBAUGH: Uh-huh.

[KING]: Could that also have been the reason why they ran into the table at the restaurant?

VENIREPERSON BRUMBAUGH: Yes.

[KING]: And so we get to a point where we get in trial and we find out that the person only ended up -- they only drank one beer and had injuries; is that enough to be . . . proof beyond a reasonable doubt?

VENIREPERSON BRUMBAUGH: Huh-uh.

[KING]: Anybody believe that that would be? All right. So would you agree then, if we've got this highest standard over here, we're a long way over here just because the officer arrested somebody under the probable cause standard, before we get to the proof beyond a reasonable doubt? Does everybody see the -- the disparity that we have between the two levels? That's kind of my example of kind of the burdens of proof in our system. And maybe that will give you a better understanding of what we're looking for in a case if you're selected as a juror.

During its closing, the State made the following argument to the jury:

During jury selection we heard about the DWI, right? And it was about the burden of proof and when you had probable cause and when you had enough to arrest somebody or when someone could be found guilty. And in that example Mr. Tyra

8

said he stumbled because he had a hurt ankle, and then they produced that at trial and showed that to the jury, right?

King objected on the ground that the State's argument was "an improper comment" because it placed the burden of proof on the defendant to prove his innocence. The trial court immediately instructed the jury that "the burden of proof is on the State throughout the entire trial," but overruled King's objection. Following the trial court's ruling, the State continued and concluded its argument as follows:

> Where does that leave us? Because Joyce Dawkins said, "He hit me." George Sanders said, "I heard her say he's hitting me," and then as soon as she said we're going to call the cops[,] he ran away. The officers show up and there's a big knot on her head and a knot on her arm, and we can't find him. That's the evidence you have in front of you.
> So what must be true for Mr. King to be not guilty, right? What must be true? Joyce lied to the police and then she came in here and lied to you. Reason and common sense I think tells you she looked like she was being pretty honest. George Sanders lied to the police and then he came in here and lied to you. Again, reason and common sense, judge credibility. And Joyce was injured some other way. Joyce got that knot on her head in some other way. That's what must be true for him not to be guilty. Somehow a grand conspiracy has been created against this man. I think we all know that's not the case. And you now know, and you've known for a while, that he is guilty of assault family violence.
> Thank you.

Here, the State's comment clearly referenced an example King used during voir dire regarding the level of proof needed to find guilt beyond a reasonable doubt and what kind of evidence constituted reasonable doubt. King asserts that by referencing his voir dire hypothetical, wherein the hypothetical defendant's recent ankle surgery explained his failure to pass a field sobriety test, the State intended for the jury to believe that King had the burden to prove his innocence in this case. Nevertheless, "[a] prosecutor may . . . properly comment on a defendant's failure to produce evidence, as long as the remarks do not fault the defendant for failing to testify."

9

*Baines v. State*, 401 S.W.3d 104, 107 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (citing

*Jackson v. State*, 17 S.W.3d 664, 674 (Tex. Crim. App. 2000); *Patrick v. State*, 906 S.W.2d 481,

491 (Tex. Crim. App. 1995)). Moreover, "[j]ury argument pointing out that the defendant has

failed to present evidence in his favor does not shift the burden of proof but instead summarizes

the state of the evidence and is a reasonable deduction from the evidence." *Campos v. State*, 458

S.W.3d 120, 152 (Tex. App.—Houston [1st Dist.] 2015, pet. filed). In deciding whether the State's

argument goes too far in this regard,

> [w]e look at the challenged language from the jury's standpoint and determine whether the comment "was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify." *Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001). Reversal is not required where the language can be reasonably construed as referring to a defendant's failure to produce testimony or evidence from sources other than himself. *Livingston v. State*, 739 S.W.3d 311, 338 (Tex. Crim. App. 1987).

*Baines*, 401 S.W.3d at 107–08. Considering the argument as a whole, the State's argument was

not "manifestly intended" to shift the burden of proof to King, but instead reasonably can be

construed as a comment on King's failure to produce contrary "evidence from sources other than

himself." *See id.*; *see also Caron v. State*, 162 S.W.3d 614, 618 (Tex. App.—Houston [14th Dist.]

2005, no pet.) (holding State's argument—"If there is something out there that is going to

exonerate you, you want to make it known."—was not an improper attempt to shift burden of

proof, but merely comment on defendant's failure to present evidence in his favor).

Finally, even if the State's argument had been improper, the trial court cured that error by

its sua sponte instruction that the State bore the burden of proof throughout the entire trial. In

*Orellana v. State*, the defendant was convicted of murder in a circumstantial case partly based on

test results that identified the victim's blood in the defendant's car. *Orellana v. State*, 381 S.W.3d 645, 652 (Tex. App.—San Antonio 2012, pet. ref'd). During direct examination of the State's crime scene investigator, State's counsel asked, "[A]re you aware that blood testing can be requested by the defense?" *Id*. at 654. Defense counsel objected that the question "shift[ed] the burden of proof." *Id*. The court of appeals held that the trial court did not err in denying Orellana's motion for mistrial:

> [W]e hold the complained of question was likely not improper, given that the State may comment on a defendant's failure to produce evidence, but even if the question was improper, the magnitude of any prejudicial effect the question might have had on the jury was slight.
>
> . . . [T]he trial court, sua sponte, specifically instructed the jury that although it was true that both the State and the defense were entitled to test evidence, it was the State that bore the burden of proof, the defense was not required to prove anything. Although the trial court did not specifically instruct the jury to disregard, it did advise the jury on the proper burden of proof, clearing up any potential confusion that might have been caused by the prosecutor's question and the colloquy that followed. And, the jury is presumed to listen to and heed such statements from the court.

*Id*. at 656 (citations omitted).

Accordingly, we find that the trial court acted within its discretion in finding the State's argument proper and in overruling King's objection, and we overrule this point of error.

11

We affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:        June 11, 2015
Date Decided:          July 21, 2015

Do Not Publish